19-CV-5451 (AT)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

L.V. on behalf of herself and her minor child, J.V.2.,

Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

**DEFENDANT'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS**

**JAMES E. JOHNSON**
Corporation Counsel of the City of New York
Attorney for Defendant New York City Department of
Education
100 Church Street
New York, New York  10007

Of Counsel:  Carolyn E. Kruk
Tel:  (212) 356-0893
Matter No. 2019-040651

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT .................................................................................. 1

FACTS ALLEGED IN THE COMPLAINT ............................................................... 2

FED. R. CIV. P. 12(B)(1) AND 12(B)(6) STANDARDS............................................ 7

POINT I

      PLAINTIFFS FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES UNDER THE IDEA, ADA AND RA. ..................................................................................9

POINT II

      EVEN IF PLAINTIFFS NEED NOT EXHAUST ALL CLAIMS FOR RELIEF, THEY FAIL TO STATE CLAIMS UNDER THE ADA AND RA.................................................................12

      (A)  ADA and RA.................................................................12

      (B)  Section 504 Retaliation Claim .................................14

POINT III

      PLAINTIFFS' FOURTEENTH AMENDMENT DUE PROCESS CLAIM ALSO FAILS..................................................16

POINT IV

      PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED BECAUSE NO PRIVATE RIGHT OF ACTION EXISTS UNDER NEW YORK EDUCATION LAW, AND PUBLIC POLICY PRECLUDES A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST A PUBLIC ENTITY. ..................................................17

POINT V

      PLAINTIFFS FAILED TO SEEK LEAVE TO FILE A LATE NOTICE OF CLAIM...................................................18

CONCLUSION................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Pages**

A.K v. Westhampton Beach Sch. Dist.,
    17-CV-0866, 2019 U.S. Dist. LEXIS 167085 (E.D.N.Y. Sept. 27, 2019) ............................16

Ackerman v. Local Union 363,
    423 F. Supp. 2d 125 (S.D.N.Y. 2006)......................................................................................8

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)................................................................................................................8

Avaras v. Clarkstown Cent. Sch. Dist.,
    15-CV-2042, 2017 WL 3037402 (S.D.N.Y. July 17, 2017)....................................................13

Bell Atl. v. Twombly,
    550 U.S. 544 (2007)............................................................................................................7, 8

Brass v. Am. Film Techs., Inc.,
    987 F.2d 142 (2d Cir. 1993)...................................................................................................8

Bryant v. Steele,
    25 F. Supp. 3d 233 (E.D.N.Y. 2014) .....................................................................................7

C.L. v. Scarsdale Free Union Sch. Dist.,
    744 F.3d 826 (2d Cir. 2014).................................................................................................12

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002)...................................................................................................8

Combier-Kapel v. Biegelson,
    242 F. App'x 714 (2d Cir. 2007) ...........................................................................................9

Conboy v. AT&T Corp.,
    241 F.3d 242 (2d Cir. 2001).................................................................................................17

Crvelin v. Bd. of Educ. of City Sch. Dist.,
    144 A.D.3d 1649, 43 N.Y.S.3d 614 (App. Div. 4th Dep't 2016)...........................................17

O.M. ex rel D.M. v. Bd. of Educ. of the Wayne Cent. Sch. Dist.,
    14-CV-6487, 2015 U.S. Dist. LEXIS 83874 (W.D.N.Y. June 29, 2015)...............................11

Doe v. East Lyme Bd. of Educ.,
    790 F.3d 440 (2d Cir. 2015)................................................................................................11

E.H. v. Bd. of Educ. of Shenendehowa Cent. Sch. Dist.,
    361 F. App'x 156 (2d Cir. 2009) .........................................................................................12

**Cases**                                                                                                **Pages**

Evans v. N.Y. Botanical Garden,
    02-CV-3591, 2002 U.S. Dist. LEXIS 16434, 2002 WL 31002814
    (S.D.N.Y. Sept. 4, 2002)...........................................................................................9

Frank v. Sachem Sch. Dist.,
    84 F. Supp. 3d 172 (E.D.N.Y. 2015),
    aff'd, 633 F. App'x 14 (2d Cir. 2016) ...................................................................13

French v. N.Y. State Dep't of Educ.,
    04-CV-0434, 2010 U.S. Dist. LEXIS 103772 (N.D.N.Y. Sept. 30, 2010)
    aff'd, 476 F. App'x 468 (2d Cir. 2011)..................................................................16

Fry v. Napoleon Cmty. Sch.,
    137 S. Ct. 743 (2017).............................................................................................9

Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,
    280 F.3d 98 (2d Cir. 2001)..............................................................................12, 16

H & H Acquisition Corp. v. Fin. Intranet Holdings,
    669 F. Supp. 2d 351 (S.D.N.Y. 2009).....................................................................8

Hardy v. N.Y.C. Health and Hosp. Corp.,
    164 F.3d 789 (2d Cir. 1999)..................................................................................18

Holmes v. Air Line Pilots Ass'n, Int'l,
    08-CV-5232, 745 F. Supp. 2d 176, 2010 U.S. Dist. LEXIS 108572
    (E.D.N.Y. Oct. 12, 2010).......................................................................................9

Howell v. N.Y. Post Co.,
    612 N.E.2d 699, 596 N.Y.S.2d 350 (N.Y. 1993)..................................................17

JTE Enters. v. Cuomo,
    2 F. Supp. 3d 333 (E.D.N.Y. Feb. 15, 2014) ........................................................8

Kajoshaj v. New York City Dep't of Educ.,
    543 F. App'x 11 (2d Cir. 2013) ............................................................................15

Knight v. Cty. of Cayuga,
    19-CV-712, 2019 U.S. Dist. LEXIS 175238 (N.D.N.Y. Oct. 9, 2019) ..................17

Kramer v. Time Warner Inc.,
    937 F.2d 767 (2d Cir. 1991)...................................................................................9

M.G. et al. v. New York City Dep't of Educ. et al.,
    13-cv-4639 (SHS)(RWL)........................................................................................3

**Cases**                                                                                                      **Pages**

McDonald v. West,
    138 F. Supp. 3d 448 (S.D.N.Y. 2015),
    aff'd, 669 F. App'x 59 (2d Cir. 2016) ...............................................................................8

Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.,
    297 F.3d 195 (2d Cir. 2002)...............................................................................................11

Oglesby v. Eikszta,
    499 F. App'x 57 (2d Cir. 2012) ..........................................................................................15

Phifer v. City of New York,
    99-CV-4422, 2003 U.S. Dist. LEXIS 6159 (S.D.N.Y. 2003)..................................................14

Polera v. Bd. of Educ.,
    288 F.3d 478 (2d Cir. 2002)...................................................................................9, 10, 11

Reyes v. Bedford Cent. Sch. Dist.,
    16-CV-2768, 2017 U.S. Dist. LEXIS 159568 (S.D.N.Y. Sept. 27, 2017) .............................11

Rutherford v. Fla. Union Free Sch. Dist.,
    16-CV-9778, 2019 U.S. Dist. LEXIS 55971 (S.D.N.Y. March 29, 2019) .........................7, 14

Streck v. Bd. of Educ. of E. Greenbush Sch. Dist.,
    280 F. App'x 66, 68 (2d Cir. 2008) ....................................................................................16

Tebbenhoff v. Elec. Data Sys. Corp.,
    244 F. App'x 382 (2d Cir. 2007) .........................................................................................18

Varas v. Clarkstown Cent. Sch. Dist.,
    18-CV-6964, 2019 U.S. Dist. LEXIS 162087 (S.D.N.Y. Sept. 21, 2019) .............................10

Wenger v. Canastota Cent. Sch. Dist.,
    979 F. Supp. 147 (N.D.N.Y. 1997),
    aff'd, 208 F.3d 204 (2d Cir. 2000).......................................................................................13

Y.D. v. New York City Dep't of Educ.,
    14-CV-1137, 2016 WL 698139 (S.D.N.Y. Feb. 19, 2016)....................................................13

**Statutes**

20 U.S.C.S. § 1400(c) ................................................................................................................17

20 U.S.C. § 1400, et seq. .......................................................................................................1, 17

29 U.S.C. 794(a) et seq. ...............................................................................................................1

**Statutes**                                                 **Pages**

42 U.S.C. § 1983 ...................................................................................................1, 10, 16

42 U.S.C. § 12101 et seq. ...............................................................................................1

Fed. R. Civ. P. 12(b)(1) ...........................................................................................1, 7, 8

Fed. R. Civ. P. 12(b)(6) ...........................................................................................1, 7, 8

N.Y. Educ. Law § 3202 ..............................................................................................1, 17

N.Y. Educ. Law § 3203 ..............................................................................................1, 17

N.Y. Educ. Law § 3813 ...................................................................................................18

N.Y. Educ. Law § 3813(1) ..............................................................................................18

N.Y. Educ. Law § 3813(2) ..............................................................................................18

N.Y. Educ. Law § 4401 ..............................................................................................1, 17

N.Y. Educ. Law § 4404 ..............................................................................................1, 17

N.Y. Educ. Law § 4410 ..............................................................................................1, 17

N.Y. Family Court Act § 1012(f)(i)(A) ..........................................................................14

N.Y. Soc. Serv. Law § 413(1) .........................................................................................14

N.Y. Soc. Serv. Law § 416 ..............................................................................................14

N.Y. Soc. Serv. Law § 419 ..............................................................................................14

N.Y. Soc. Serv. Law § 422(2) .........................................................................................15

Rehabilitation Act § 504 ....................................................1, 3, 6, 9, 10, 12, 13, 14, 16

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §
    1327 (3d ed. 2010) ....................................................................................................9

## PRELIMINARY STATEMENT

Plaintiff L.V., mother of Plaintiff J.V.2., brings this action against Defendant New York City Department of Education (DOE or "Defendant") alleging violations of: (1) the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, et seq.; (2) discrimination and retaliation under Section 504 of the Rehabilitation Act ("Section 504" or RA), 29 U.S.C. 794(a) et seq.; (3) their Fourteenth Amendment right to due process pursuant to Section 1983 of Title 42 of the United States Code ("Section 1983"), 42 U.S.C. 1983; and (4) the Americans with Disabilities Act (ADA), 42 U.S.C. 12101 et seq.. Plaintiffs also allege a violation of Sections 3202, 3203, 4401, 4404, and 4410 of the New York Education Law (NYEL) and claim intentional infliction of emotional distress. They seek $10 million in damages in addition to injunctive and declaratory relief.

Defendant now respectfully moves the Court for an Order dismissing Plaintiffs' Second Amended Complaint (SAC) pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that: (1) Plaintiffs failed to exhaust their administrative remedies under the IDEA, ADA and RA; (2) Plaintiffs' conclusory allegation that DOE acted maliciously in reporting suspected educational neglect to the State Central Register fails to state a claim of retaliation under Section 504; (3) Plaintiffs' Fourteenth Amendment due process claim fails in light of the procedural safeguards provided by the IDEA and New York implementing regulations; (4) Plaintiffs' state law claims fail because, under the cited NYEL provisions do not create any private rights of action, and a claim of intentional infliction of emotional distress cannot be brought against a public entity. Plaintiffs' state law should also be dismissed as Plaintiffs do not allege that they were granted leave to file a late notice of claim.

## FACTS ALLEGED IN THE COMPLAINT

Plaintiff, L.V., is the parent of Plaintiff J.V.2., who is four years old and diagnosed with autism spectrum disorder. SAC ¶ 1. Their SAC takes a kitchen sink approach to alleging that Defendant failed and continues to fail to ensure that J.V.2. receives appropriate special education services to address his educational needs under the IDEA. Id. ¶ 4. In particular, Plaintiffs claim that Defendant is violating the Pendency Orders issued by the Impartial Hearing Officer (IHO) on September 12, 2018, and March 12, 2019 Id. ¶¶ 8-9.[1]

Plaintiffs claim that they have repeatedly attempted to exhaust administrative remedies but that due to Defendant's improper actions and their delays – systemic and procedural, however, Plaintiffs have not yet been able to obtain consistent or effective relief. Id. ¶ 13. They claim that the deficiencies in the overall structure of the administrative proceedings mean exhaustion is neither reasonably possible nor required. Id.¶ 14.

On July 19, 2017, J.V.2. was found eligible for Early Intervention (EI) services, a program administered by the New York State Department of Health for children with developmental delays aged 2 or younger. 139-140. In particular, he was found eligible for applied behavior analysis (ABA) therapy, occupational therapy (OT), speech and language therapy (SLT), and physical therapy (PT). Id. ¶ 140. J.V.2. received ABA from September 5, 2017 through to January 31, 2018, with certain ABA hours being provided in-home. ¶141-142. The EI services were to continue until September 1, 2018.[2] Id. ¶¶ 144, 151.

---

[1] As discussed below, these Pendency Orders are outdated, as the Second Interim Pendency Order dated September 6, 2019 superseded all earlier Pendency Orders.
[2] Plaintiff J.V.2. became eligible to receive a free appropriate public education (FAPE) in 2018 when he turned three years old. SAC ¶ 18.

Plaintiffs allege that when J.V.2. became school aged and transitioned from EI to the CPSE, Defendant terminated J.V.2.'s ABA services. Id. ¶¶ 158-159.[3] Plaintiffs allege that this systemic widespread policy is applied to all preschool children without regard to any particular child's progress or needs. Id. ¶159.

On November 20, 2017, the Committee on Preschool Special Education (CPSE) held an initial IEP meeting for J.V.2., and recommended a 12-month school year in a class of 8:1+2 (8 students, one teacher and two paraprofessional teacher's aides) along with SLT, OT, PT and transportation, with services to begin on September 1, 2018. Id. ¶ 144.

On December 7, 2017, the CPSE reconvened to change J.V.2.'s IEP because there was no preschool with an appropriate seat available consistent with the CSPE's prior recommendations. Id. ¶ 149. The CPSE recommended that J.V.2. receive ten 60-minute sessions with a Special Education Itinerant Teacher (SEIT) (10 x 60 minute sessions/week) for the 2018-2019 school year. Id. ¶ 150. The start date for this IEP was September 1, 2018. Id. ¶ 151.

On June 5, 2018, the CPSE reconvened and recommended a SEIT (5 x 120 minute weekly sessions), with services scheduled to begin earlier, on July 1, 2018. Id. ¶¶ 163-164.

Plaintiff L.V. filed a Due Process Complaint (DPC) on June 6, 2018, and an Amended DPC on October 9, 2018. 168. Plaintiff alleges that Defendant would not agree to implement the "2018 IEPs" without a pendency order. 170.

---

[3] Based on these allegations, J.V.2. is a class member in the proposed class action, M.G. et al. v. New York City Dep't of Educ. et al., 13-cv-4639 (SHS)(RWL), pending in this District. In M.G., Plaintiffs allege that both the New York State Education Department and the DOE have a number of policies and practices that are violative of the IDEA and Section 504. The Court has certified an "Autism Services Class," which consists of students diagnosed or classified as autistic. Plaintiffs allege that DOE systemically refuses to recommend 1:1 instruction, services employing the applied behavioral analysis methodology, and extended day, at-home, and after-school services to Autism Services Class members, regardless of the individual needs of students, and that this violates the students' rights.

On July 25, 2018, an Interim Order on Pendency was issued by IHO Jeffrey Schiro to effectuate the December 7, 2019 IEP effective from June 6, 2018 through to the conclusion of the administrative proceedings (the "July 2018 Pendency Order"). This July 2018 Pendency Order did not include any transportation services. Id. ¶ 180.

In the fall of 2018, J.V.2. began receiving SEIT services as well as OT, PT, and SLT services from Sensory Freeway. Id. ¶ 175. In November 2018, Sensory Freeway advised L.V. that it could no longer provide services to J.V.2. because she could not "handle" the behavior of J.V.2.'s sister. 176. J.V.2.'s SEIT also resigned around this time. Id. ¶ 177.

Plaintiffs allege that, since this time, J.V.2. has been out of school and without services in violation of his pendency orders. Id. ¶ 178. Plaintiff L.V. alleges that she made herculean efforts to try to obtain services for J.V.2. but that she was unable to find service providers who would come to her home or could provide community-based support "within the hours L.V. had available considering the service requirements of her other child". Id. ¶ 179. Plaintiff L.V. alleges that as a result of Defendant's actions and failures, she was unable to unable to pursue education, job and/or income opportunities, and suffered from emotional anxiety and emotional distress. Id. ¶¶ 181, 183.

On March 11, 2019, ACS made an emergency visit to Plaintiff L.V.'s home. Id. ¶ 193. ACS advised L.V. that it received an allegation that L.V. was not cooperating with Defendant's "efforts to arrange, inter alia, home-based speech and OT services providers that the DOE had made available." Id. ¶ 193. Plaintiff L.V. alleges that Defendant's call to ACS was made to retaliate against her for asserting her rights to have the pendency order enforced against Defendant. Id. ¶ 194. Plaintiffs allege that Defendant's allegations against L.V. were "based not on educational neglect but upon special education related services, [thus] they were per se

violative of law, in addition to being false, misleading, and retaliatory." Id. ¶ 197. Plaintiffs

allege that Defendant "acted maliciously because it was aware that the allegations were false and

misleading, and were designed solely to harass and retaliate against L.V. because she asserted

her parental rights against the DOE." Id. ¶ 198.

On an unspecified date, Plaintiff L.V. identified the McCarton Center to deliver ABA

services as well as OT, PT, and SLT. Id. ¶ 199. On March 12, 2019, the IHO issued an Interim

Order Modifying Pendency Order directing DOE to provide 1:1 ABA and OT, SLT and PT

services to J.V.2. at McCarton, in additional to transportation services with a qualified

transportation aide. Id. ¶ 201 (see also Dkt. No. 5-1).

On April 8, 2019, J.V.2. started to receive services at McCarton. Id. ¶ 202. On May 17,

2019, McCarton advised Plaintiff L.V. that it would no longer be able to provide services to

J.V.2. Id. ¶ 204. On May 20, 2019, Plaintiffs' former counsel, Elisa Hyman, informed Defendant

of its need to locate alternative providers. Id. ¶ 205. Plaintiffs allege that, to date, Defendant has

failed to do so. Id. ¶ 205.

Plaintiffs filed another Amended DPC on May 21, 2019 seeking a lengthy list of

declaratory and injunctive relief (the "May 2019 DPC"). See Exhibit A attached to the

Declaration of Min Baharov dated December 4, 2019 (the "Baharov Decl.").

Plaintiffs filed their Complaint on June 11, 2019. Dkt. 1.[4] That same day, the parties

agreed to a stipulation that same date providing that Defendants would make best efforts to

locate certain service providers. Dkt. 3. Although Plaintiffs disputed that Defendant complied

with this stipulation, on July 2, 2019, the Court found that Defendant did not violate the order

and ordered the parties to provide a status report after the next IHO hearing date. Dkt. 10.

Plaintiffs filed an Amended Complaint on July 3, 2019. 14. The parties filed status reports on July 22 (Dkt 26) and September 5, 2019 (Dkt 34). The next day, on September 6, 2019, IHO Schiro issued a Second Interim Order Modifying Pendency (the "September 2019 Pendency Order"). See Exhibit B attached to Baharov Decl. The September 2019 Pendency Order provides that J.V.2. shall receive 10 hours/week of 1:1 ABA, OT (3 x 45 minutes/week), SLT (4 x 45 minutes/week), and PT (3 x 45 minutes/week), and orders DOE to provide or fund an appropriately trained transportation aide to supervise the student during transport to and from his services outside of the student's home. See Baharov Decl. at Exhibit B, Sections I and II. Since then, hearings were held before the IHO on September 27, October 31 and November 8, 2019 and future hearings are scheduled for December 13, 2019 and January 24, 2020. See Baharov Decl. at para. 6.

Plaintiffs filed a Second Amended Complaint (SAC) on September 20, 2019. Dkt 37. The SAC does not, however, detail any of the recent developments in this case, including the DOE's compliance (or any alleged non-compliance) with most recent September 2019 Pendency Order. See, generally, SAC. Instead, Plaintiffs allege that Defendant's IEP development process, the resulting IEPs, programs and placements for J.V.2. during the 2017-2018 and 2018-2019201-2019 school years were substantively and procedurally flawed for a list of reasons. Id. ¶ 206(a)-(z). Additionally, Plaintiffs allege, that Defendant discriminated against J.V.2 under Section 504 by, inter alia, denying him reasonable accommodations; adopting systemic policies, procedures, and practices that violated J.V.2's rights under the IDEA and New York State law; and engaging in widespread and pervasive violations of the IDEA and NYEL. Id. ¶ 228. Plaintiffs further allege that Defendant denied J.V.2. access to "autism services", which Plaintiffs define as (a) 1:1

---

[4] Plaintiff alleges she filed a late notice of a claim with the Office of the Comptroller on August

instruction with a teacher; (b) research-based instructional strategies, including, but not limited to, ABA; (c) extended school day, after school or home-based services; (d) parent training at home; (e) services to promote inclusion; (f) training for staff; (g) rehabilitation training; (h) leisure training; or (n) instruction in a ratio smaller than 6:1:1 for students in a public school. Id. ¶ 84.

Plaintiffs seek injunctive relief that mirrors the relief sought in their May 2019 DPC. Compare SAC pp. 50-52, para. d(a)-(m) with May 2019 DPC ¶71(a)-(m) (Baharov Decl. as Exhibit A). Plaintiffs also seek declaratory relief and damages of "at least ten million dollars." SAC at Wherefore Clause ¶ 57 and generally.

## ARGUMENT

## FED. R. CIV. P. 12(B)(1) AND 12(B)(6) STANDARDS

Defendant moves to dismiss the SAC pursuant to Rule 12(b)(1) and 12(b)(6).

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." Bryant v. Steele, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014)(quotation marks omitted). "On a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists". Rutherford v. Fla. Union Free Sch. Dist., 16-CV-9778, 2019 U.S. Dist. LEXIS 55971 at *54 (S.D.N.Y. March 29, 2019) (citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its face," which requires that the "plaintiff plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Bell Atl. v.

---

21, 2019. SAC ¶ 33.

Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570 (internal

quotation marks omitted)). A plaintiff is not required to provide "detailed factual allegations" in

the complaint, but must assert "more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." Id. at 555. Ultimately, the facts pleaded in the

complaint "must be enough to raise a right to relief above the speculative level." Id. The Court

must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of

the non-movant. See McDonald v. West, 138 F. Supp. 3d 448, 452 (S.D.N.Y. 2015), aff'd, 669

F. App'x 59 (2d Cir. 2016).

In adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to

Rule 12(b)(1), the court may consider matters outside the pleadings." JTE Enters. v. Cuomo, 2 F.

Supp. 3d 333, 338 (E.D.N.Y. Feb. 15, 2014) (citation, alterations, and quotation marks omitted).

Similarly, in considering a Rule 12(b)(6) motion, "a district court may consider the facts alleged

in the complaint, documents attached to the complaint as exhibits, and documents incorporated

by reference in the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir.

2002). "Even where a document is not incorporated by reference, the court may nevertheless

consider it where the complaint relies heavily upon its terms and effect, which renders the

document integral to the complaint." Id. at 153 (internal quotation marks omitted).

Additionally, the Court may also look to "matters of which judicial notice may be taken,"

H & H Acquisition Corp. v. Fin. Intranet Holdings, 669 F. Supp. 2d 351, 357 (S.D.N.Y. 2009)

(quoting Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)), "even if the

corresponding documents are not attached to[] or incorporated by reference in the complaint,"

Ackerman v. Local Union 363, 423 F. Supp. 2d 125, 127 (S.D.N.Y. 2006). The Court should

generally take judicial notice "to determine what statements [the documents] contain[] . . . not for the truth of the matters asserted." Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991). "[T]he Court may refuse to accept as true allegations in the Complaint that are contradicted by this record." Bohmer, 684 F. Supp. 2d at 360; see also Holmes v. Air Line Pilots Ass'n, Int'l, 08-CV-5232, 745 F. Supp. 2d 176, 2010 U.S. Dist. LEXIS 108572, at *11 (E.D.N.Y. Oct. 12, 2010); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 (3d ed. 2010). In this case, the Court may consider the September 2019 Pendency Order in deciding this motion without converting it to a motion for summary judgment. Combier-Kapel v. Biegelson, 242 F. App'x 714, 715 (2d Cir. 2007) (summary order) (approving of district court's consideration documents in administrative record in deciding IDEA claims, as documents were subject to judicial notice and integral to complaint); Evans v. N.Y. Botanical Garden, 02-CV-3591, 2002 U.S. Dist. LEXIS 16434, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) (same).

## POINT I

### PLAINTIFFS FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES UNDER THE IDEA, ADA AND RA.

Plaintiffs' attempt to leapfrog the administrative process – without exhausting their administrative remedies – and ask this court to order the relief they seek in their administrative Due Process Complaint (DPC). As a result, the court lacks statutory subject matter jurisdiction to hear the instant matter.

In New York, before bringing an IDEA claim to federal court, plaintiffs must exhaust their administrative remedies before two layers of administrative tribunals. Polera v. Bd. of Educ., 288 F.3d 478, 483 (2d Cir. 2002) (holding that failure to exhaust administrative remedies deprives federal courts of subject matter jurisdiction); see also Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 749 (2017). When a plaintiff is brining suit under Section 504, the ADA or similar

laws but seeks relief that is also available under the IDEA, the plaintiff must first exhaust the IDEA's administrative remedies. Id. at 750. In other words, to determine whether a plaintiff must exhaust the IDEA's administrative remedies, the court must evaluate whether a plaintiff alleges that the violations constitute the denial of a free appropriate public education (FAPE). Id. at 753-54. Where a plaintiff alleges the denial of a FAPE by the alleged failure to provide certain services to a child with a disability, a plaintiff must exhaust the administrative remedies. Id. at 754. A plaintiff's initial pursuant to the IDEA's administrative remedies is strong evidence that the substance of a plaintiff's claims is the denial of FAPE. Id. at 757-758.

In this case, since June 7, 2018, IHO Schiro has been conducting – and the parties have been participating – in hearings related to the DPCs that L.V. has filed. See Baharov Decl. at para. 3. Additional hearing dates are scheduled for December 13, 2019 and January 24, 2020. Id. at para. 6. In an attempt to leapfrog the administrative process, Plaintiffs ask this court to order the same relief they seek in their May 2019 DPC. Compare SAC at pp. 50-52, para. d(a)-(m) with May 2019 DPC (Baharov Decl., Exhibit A at ¶ 71(a)-(m)). In short, Plaintiffs seek a finding that DOE denied Plaintiff student J.V.2. a FAPE and that this denial constitutes a violation of the IDEA, Section 504 and the ADA. See SAC ¶¶ 206-211. Although Plaintiffs seek compensatory damages as a form of relief, "the mere fact that a plaintiff seeks remedies not otherwise available under the IDEA is not dispositive of whether non-IDEA claims – such as those seeking relief under the ADA, the RA or Section 1983 – complain of a denial of FAPE. Varas v. Clarkstown Cent. Sch. Dist., 18-CV-6964, 2019 U.S. Dist. LEXIS 162087, at *48 (S.D.N.Y. Sept. 21, 2019) (citing Polera, 288 F.3d at 487).

Plaintiffs' purported systemic violation claims should also be dismissed because Plaintiff L.V. seeks relief only on behalf of her son and does not plausibly allege that the DOE caused

harm to other students with a disability. Reyes v. Bedford Cent. Sch. Dist., 16-CV-2768, 2017 U.S. Dist. LEXIS 159568, at *32 (S.D.N.Y. Sept. 27, 2017) ("Plaintiff points to no other circumstances, other than her own, in which a child covered by the IDEA was deprived of special education benefits because of a policy or practice of the [d]istrict[.]"); O.M. ex rel D.M. v. Bd. of Educ. of the Wayne Cent. Sch. Dist., 14-CV-6487, 2015 U.S. Dist. LEXIS 83874, at *6-7 (W.D.N.Y. June 29, 2015) (dismissing systemic violation claim where plaintiff parent's substantive allegations focused on district's alleged failures regarding her child "individually as opposed to systemic failures affecting other disabled students in the [d]istrict" and parent "plainly d[id] not bring this action on behalf of any individual other than her son").

Any argument that Plaintiffs need not exhaust to the extent they seek to vindicate a pendency right under Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199 (2d Cir. 2002) and Doe v. East Lyme Bd. of Educ., 790 F.3d 440, 455 (2d Cir. 2015) should fail because they seek to enforce the September 2018 and March 2019 Pendency Orders (see SAC ¶¶ 9, 178, and Wherefore b.(i) and (c)), which were rescinded by the IHO's Second Interim Order Modifying Pendency on September 6, 2019 ("September 2019 Pendency Order"). See Baharov Decl. at Exhibit B, Section IV(C) (holding that the September 2019 Pendency Order rescinded all "[a]ll prior Interim Orders issued").

In short, Plaintiffs' tactics – by seeking the same relief at both the administrative level and from this court – has resulted in disjointed and needless ongoing litigation in two different fora, which the IDEA exhaustion requirement seeks to prevent. See Polera, 288 F.3d at 489 (noting that "[s]weeping exceptions to the exhaustion requirement are at odds" with the IDEA). In light of IHO Schiro's ongoing jurisdiction over this matter, and Plaintiffs' failure to demonstrate with factual specificity how the IDEA's administrative remedies are inadequate or

futile this court should dismiss the SAC to the extent that they bring claims under the IDEA, RA and ADA seeking the same relief sought in their DPC.

## POINT II

### EVEN IF PLAINTIFFS NEED NOT EXHAUST ALL CLAIMS FOR RELIEF, THEY FAIL TO STATE CLAIMS UNDER THE ADA AND RA.

**(A)     ADA and RA**

The ADA and Section 504 address discrimination against disabled students, rather than alleged failures to provide special education series. Accordingly, to state a prima facie case under the ADA or the Rehabilitation Act, the plaintiff must show "that [he] was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability." E.H. v. Bd. of Educ. of Shenendehowa Cent. Sch. Dist., 361 F. App'x 156, 161 (2d Cir. 2009). "Courts in this Circuit have recognized that a Section 504 claim may be predicated on the claim that a disabled student was denied access to a free appropriate education, as compared to the free appropriate education non-disabled students receive. Such a claim, however, requires proof of bad faith or gross misjudgment." C.L. v. Scarsdale Free Union Sch. Dist., 744 F.3d 826, 841 (2d Cir. 2014) (internal citations and quotation marks omitted). A plaintiff must further allege facts showing the violation "was motivated by discriminatory animus or ill will based on the plaintiff's disability" (under the ADA) or was with "deliberate indifference" to disabled person's rights (under the Rehabilitation Act). Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 111, 115 (2d Cir. 2001).

Here, Plaintiffs allege, at SAC ¶ 228, that Defendant discriminated against J.V.2 under Section 504 by, inter alia, denying him reasonable accommodations; adopting systemic policies, procedures, and practices that violated J.V.2's rights under the IDEA and New York State law;

and engaging in widespread and pervasive violations of the IDEA and New York State Education law. Plaintiffs allege that Defendant denied him access to "autism services", which Plaintiffs define as (a) 1:1 instruction with a teacher for all or part of the day; (b) research-based instructional strategies, including, but not limited to, Applied Behavioral Analysis (ABA); (c) extended school day, after school or home-based services (for students attending a school-day program); (d) parent training at home; (e) services to promote inclusion; (f) training for staff; (g) rehabilitation training; (h) leisure training; or (n) instruction in a ratio smaller than 6:1:1 for students in a public school (at SAC ¶ 84).

As discussed above at Point I, Plaintiffs' ADA and Rehabilitation Act claims are all fundamentally assertions that Defendant failed to provide J.V.2. with a FAPE, with conclusory claims that Defendant failed to provide J.V.2. with a reasonable accommodation in the form of "autism services". This conclusory allegation is not enough to meet the pleading requirements of the ADA or Section 504. Wenger v. Canastota Cent. Sch. Dist., 979 F. Supp. 147, 153 (N.D.N.Y. 1997), aff'd, 208 F.3d 204 (2d Cir. 2000); see also Frank v. Sachem Sch. Dist., 84 F. Supp. 3d 172, 187 (E.D.N.Y. 2015) ("The fact that the Plaintiff disagreed with the CSE's decision does not by itself give rise to an inference of discrimination under the ADA."), aff'd, 633 F. App'x 14 (2d Cir. 2016); Y.D. v. New York City Dep't of Educ., 14-CV-1137, 2016 WL 698139, at *6 (S.D.N.Y. Feb. 19, 2016) ("Allegations merely demonstrating disagreement with an IEP are thus insufficient to state a Rehabilitation Act claim."); Avaras v. Clarkstown Cent. Sch. Dist., 15-CV-2042, 2017 WL 3037402, at *28 (S.D.N.Y. July 17, 2017) ("[The student] was provided educational benefits . . . Plaintiff is simply contesting whether the benefits provided were appropriate.").

As Plaintiffs fail to provide sufficient factual detail to show that the alleged "discrimination" is anything more than a rehashing of the allegation that Defendant failed to provide J.V.2. with a FAPE, their ADA and Section 504 claims should be dismissed.

**(B)      Section 504 Retaliation Claim**

Plaintiffs allege retaliation under Section 504 of the RA ("Third Claim for Relief") in connection with an alleged report of suspected educational neglect[5] called in to the New York State Central Register (SCR) by an unidentified DOE employee. See SAC ¶¶ 235-240, 193-198.

To state a claim for retaliation under Section 504, a plaintiff must establish that: "[1] a plaintiff was engaged in protected activity; the alleged retaliator knew that [the] plaintiff was involved in protected activity; [3] an adverse decision or course of action was taken against plaintiff; and [4] a causal connection exists between the protected activity and the adverse action." Rutherford, 2019 U.S. Dist. LEXIS 55971, at *114-115 (citation and quotation marks omitted).

As an initial matter, under New York Social Services Law (NYSSL), school officials are mandated reporters with an affirmative obligation to report suspected child abuse or neglect, encouraged to err on the side of caution, and presumed to act in good faith. NYSSL §§ 413(1), 416, 419. As a result, courts exercise a considerable degree of tolerance in granting statutory immunity to those who report in good faith. See, e.g., Phifer v. City of New York, 99-CV-4422, 2003 U.S. Dist. LEXIS 6159, at *21-22 (S.D.N.Y. 2003).

Against this backdrop, Plaintiffs claim that DOE's alleged report to the SCR was "based not on educational neglect but upon [J.V.2.'s] special education related services" and thus "per

---

[5] Educational neglect is part of the general definition of neglect, which involves "the failure of [a] parent or other person legally responsible for [a child's] care to exercise a minimum degree of care in supplying the child with adequate food, clothing, shelter *or education* in accordance with [the state education law]." New York Family Court Act § 1012(f)(i)(A)(emphasis added).

se violative of law [and] false, misleading, and retaliatory". <u>See</u> SAC ¶ 197. This argument misses the mark. If the SCR accepted the DOE's alleged report to the SCR, then the substance of the DOE's alleged report must have met the definition of educational neglect. Indeed, New York State Office of Children and Family Services (OCFS) guidelines make clear that educational neglect includes circumstances where, for example, a parent fails to exercise reasonable care in facilitating school attendance or fails to cooperate with a district to obtain a special education plan for their child.[6] As such, Plaintiffs' attempt to distinguish between educational neglect and special education services in order to show "bad faith" must fail.

Likewise, Plaintiffs' conclusory allegation that DOE "acted maliciously because it was aware that the allegations [of educational neglect] were false and misleading" and "designed solely to harass and retaliate against" Plaintiff parent, SAC ¶ 198, are "mere conclusory statements" that the court need not accept, particularly in light of Defendant's staff's legal obligation to report educational neglect. <u>See</u> <u>Kajoshaj v. New York City Dep't of Educ.</u>, 543 F. App'x 11, 15 (2d Cir. 2013) (affirming dismissal of claims that school's reports to ACS were motivated by discrimination because "reporting suspected abuse are consistent with obligations under New York law."); <u>Oglesby v. Eikszta</u>, 499 F. App'x 57, 60 (2d Cir. 2012) ("We owe defendants' decision to report reasonably suspected abuse and neglect 'unusual deference' given their legal obligation to report suspected abuse and their potential liability for failing to do so.").

Additionally, as discussed above, Plaintiffs fail to adequately allege that Defendant's alleged call to the SCR was motivated by discriminatory animus. That is, Plaintiffs do not allege that Defendant's alleged conduct was "motivated by discriminatory animus or ill will based on

---

[6] <u>See</u> OCFS, Child Protective Services Manual, available at:
https://ocfs.ny.gov/main/cps/manual/2018-CPS-Manual.pdfat at p. E-11; <u>see also</u> NYSSL §

the plaintiff[] [J.V.2.'s] disability." <u>Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn</u>, 280 F.3d 98, 115 (2d Cir. 2001). As a result, Plaintiffs' Section 504 retaliation claim should be dismissed.

### POINT III

### PLAINTIFFS' FOURTEENTH AMENDMENT
### DUE PROCESS CLAIM ALSO FAILS.

Plaintiffs appear to assert Section 1983 claims based on Defendant's alleged violations of the IDEA and "New York State law" and deprivations of J.V.2.'s right to due process under the Fourteenth Amendment. Where IDEA and Section 1983 claims are brought simultaneously, a plaintiff must prove that a constitutional violation occurred "outside the scope of the IDEA." <u>A.K v. Westhampton Beach Sch. Dist.</u>, 17-CV-0866, 2019 U.S. Dist. LEXIS 167085 at *44 (E.D.N.Y. Sept. 27, 2019) (citations omitted). That is, Plaintiffs cannot use Section 1983 to obtain damages for IDEA violations absent allegations that they were denied IDEA's "procedural safeguards or administrative remedies." <u>Streck v. Bd. of Educ. of E. Greenbush Sch. Dist.</u>, 280 F. App'x 66, 68 (2d Cir. 2008) ("[P]laintiffs may not rely on § 1983 to pursue monetary damages for violations of the IDEA" where "they were afforded a hearing before an impartial hearing officer and review by a state review officer."); <u>French v. N.Y. State Dep't of Educ.</u>, 04-CV-0434, 2010 U.S. Dist. LEXIS 103772, *11 (N.D.N.Y. Sept. 30, 2010) ("Plaintiff's complaint makes clear that the alleged section 1983 violations are merely a reiteration of his IDEA claims, as they attack Defendant['s] alleged noncompliance with the IDEA and its effects on Plaintiff."), <u>aff'd</u>, 476 F. App'x 468 (2d Cir. 2011).

Here, Plaintiffs are availing themselves of the IDEA's remedial procedures as they have been provided with numerous hearings before IHO and granted pendency, as discussed above.

---

422(2) (affording workers at the SCR discretion to accept or reject a call of purported abuse and neglect).

As Plaintiffs do not allege, in anything other than a conclusory manner, that they have not received the procedural safeguards provided by the IDEA and New York implementing regulations, their Fourteenth Amendment due process claim should be dismissed.

**POINT IV**

**PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED BECAUSE NO PRIVATE RIGHT OF ACTION EXISTS UNDER NEW YORK EDUCATION LAW, AND PUBLIC POLICY PRECLUDES A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST A PUBLIC ENTITY.**

Plaintiffs' state law claims for purported violations of New York Education Law (NYEL) and its regulations, SAC ¶¶ 257-267 ("Sixth Claim"), and intentional infliction of emotional distress, id. ¶¶ 268-269 ("Seventh Claim"), should be dismissed for the following reasons.

First, Sections 3202, 3203, 4401, 4404, and 4410 of the NYEL govern the provision of special education, and set out the substantive and procedural obligations of school districts and state agencies. These statutes do not expressly or impliedly authorize a private cause of action.[7] As such, Plaintiffs' claims under the NYEL should be dismissed.

Second, public policy bars claims sounding in intentional infliction of emotional distress against a governmental entity. Knight v. Cty. of Cayuga, 19-CV-712, 2019 U.S. Dist. LEXIS 175238, at *41 (N.D.N.Y. Oct. 9, 2019) (citing Crvelin v. Bd. of Educ. of City Sch. Dist., 144 A.D.3d 1649, 43 N.Y.S.3d 614, 614 (App. Div. 4th Dep't 2016)). Thus, Plaintiffs' claims of infliction of emotional distress against DOE should be dismissed. Moreover, the standard for presenting a valid claim of intentional infliction of emotional distress is "rigorous, and difficult

---

[7] Only the IDEA, 20 U.S.C.S. § 1400 et seq., creates a private right of action to enforce a child's right to a free appropriate public education, 20 U.S.C.S. § 1400(c), which is defined to include special education and related services tailored to the needs of individual children.

17

to satisfy." Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (citing Howell v. N.Y. Post Co., 612 N.E.2d 699, 702, 596 N.Y.S.2d 350 (N.Y. 1993). Here, Plaintiffs' allegations do not reflect conduct "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Tebbenhoff v. Elec. Data Sys. Corp., 244 F. App'x 382, 384 (2d Cir. 2007).

## POINT V

### PLAINTIFFS FAILED TO SEEK LEAVE TO FILE A LATE NOTICE OF CLAIM.

New York law requires that a plaintiff plead and prove compliance with Section 3813's notice of claim and statute of limitations requirements in any action against the DOE. See N.Y. Educ. Law § 3813(1). In particular, Section 3813 provides that "no action or special proceeding founded upon tort" can be "maintained" against any school district, board of education, school, or school employee "unless a notice of claim shall have been made and served in compliance with section fifty-e of the general municipal law." NYEL § 3813(2). New York law also requires a plaintiff plead statutory compliance. See Hardy v. N.Y.C. Health and Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999).

In this case, Plaintiffs allege they filed a "late notice of claim" with the Office of the City Comptroller on August 21, 2019. SAC ¶ 33. However, Plaintiffs fail to allege that they were granted leave to file a late notice of claim. Moreover, Section 3813 requires service of the notice of claim on the school district, DOE, rather than the Comptroller's office. NYEL § 3813(1). Accordingly, Plaintiffs state and local law claims should be dismissed.

## **CONCLUSION**

Based on the foregoing, Defendant respectfully requests that its motion to dismiss the Second Amended Complaint be granted in its entirety, and that the Order of dismissal apply to any substantively identical complaints subsequently filed or identified by the Court.

Dated:      New York, New York
            December 6, 2019

**JAMES E. JOHNSON**
Corporation Counsel of the
  City of New York
Attorney for Defendant New York City Department
  of Education
100 Church Street, Room 2-192
New York, New York 10007
(212) 356-0893
ckruk@law.nyc.gov

By:      s/
          Carolyn E. Kruk
          Assistant Corporation Counsel