UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

L.V. on behalf of herself and her minor child, J.V.2,

                                               Plaintiffs,

                       -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                                         Defendant.

-------------------------------------------------------------------- x

**DECLARATION OF
MIN BAHAROV**

19-CV-5451 (AT)

      **MIN BAHAROV**, under penalty of perjury, declares pursuant to 28 U.S.C. § 1746, that the following statements are true and correct:

      1.      I make the following statements based upon my personal knowledge and/or based upon my review of records maintained by the New York City Department of Education (DOE). I submit this declaration in support of the DOE's motion to dismiss.

      2.      I am employed by the DOE as an Agency Attorney in its Special Education Unit. Since February 21, 2019, I have represented the DOE in the ongoing administrative hearing, case number 173606 brought by Plaintiff L.V., on behalf of J.V.2, before Impartial Hearing Officer (IHO) Jeffrey Schiro.

      3.      To initiate the administrative hearing before the IHO, Plaintiff L.V. filed an initial Due Process Complaint (DPC) on June 7, 2018. Plaintiff L.V. filed an Amended DPC on October 9, 2018 and a Second Amended DPC on May 21, 2019 (the "May 2019 DPC"). A true and accurate copy of the May 2019 DPC is attached as **Exhibit A**.

      4.      A pendency hearing was held on July 25, 2018, and IHO Schiro issued an Interim Order on Pendency on September 12, 2018. A second pendency hearing was held on February 28, 2019, and the IHO issued an Interim Order Modifying Pendency on March 12, 2019. On

September 6, 2019, IHO Schiro issued a Second Interim Order Modifying Pendency (the "September 2019 Pendency Order"). A true and accurate copy of the September 2019 Pendency Order is attached as **Exhibit B**.

5.     The September 2019 Pendency Order provides, among other things, that J.V.2. shall receive 10 hours/week of 1:1 applied behavior analysis (ABA), occupational therapy (3 x 45 minutes/week), speech language therapy (4 x 45 minutes/week), and physical therapy (3 x 45 minutes/week), and orders DOE to provide or fund an appropriately trained transportation aide to supervise J.V.2. during transport to and from his special education instruction and related services delivered outside of the student's home. See Exhibit B at Sections I and II. The September 2019 Pendency Order also rescinded all prior Interim Orders issued by the IHO. See Exhibit B at Section IV(c).

6.     In addition to the two pendency hearings held before IHO Schiro on July 25, 2018 and February 28, 2019, hearings on the merits of Plaintiff's May 2019 DPC have been held on July 19, August 22, September 27, October 31 and November 8, 2019. Future hearing dates are scheduled for December 13, 2019 and January 24, 2020.

Dated: Brooklyn, New York
       December 4, 2019

Min Baharov

# Exhibit A

THE LAW OFFICE OF

# ELISA HYMAN, P.C.

---

<u>**Via Email: IHOQuest@schools.nyc.gov**</u>
Impartial Hearing Officer
New York City Department of Education
Impartial Hearing Office
131 Livingston Street-Room 201
Brooklyn, NY 11201

<u>**Via Email: SpecedIH@mail.nysed.gov**</u>
New York State Education Department
Impartial Hearing Unit
89 Washington Avenue, Room EB307M
Albany, N.Y. 12234
Attn: Impartial Hearing Reporting System

**DUE PROCESS COMPLAINT**

| | |
|---|---|
| RE: | J█ V█ |
| Parent: | L█ V█ |
| Address: | ████████ |
| | Staten Island, NY 10305 |
| DOB: | ████2015 |
| District: | 31 |
| NYC ID: | ████ |
| Classification: | Preschool Child with a Disability |
| School: | Out of School with no services |
| Date Filed: | May 21, 2019 |

1.      On behalf of L█ V█, the Parent, of J█ V█, we respectfully submit this due process hearing against the New York City Department of Education ("DOE") pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA") and its implementing regulations, Section 504 of the Rehabilitation Act of 1972 ("Section 504") and its implementing regulations, the Americans with Disabilities Act ("ADA") and its implementing regulations, and Article 89 of the New York Education Law, specifically N.Y. Education Law §4401 *et seq.*, and its regulations. This case is also being filed pursuant to 42 U.S.C. §1983. All of the allegations herein are made upon direct knowledge, information and belief.

2.      An impartial hearing is currently pending on J█'s behalf regarding the development and implementation of J█'s December 7, 2017 IEP and June 8, 2018 IEP, pursuant to the Parent's Due Process Complaint filed on June 8, 2018 (the "DPC") and amended on October 9, 2018 (the "ADPC"). That hearing is designed no. 173606. Among the claims and relief case no. 173606, the DPC and ADPC alleged the DOE had not provided the Parent with records and requested the CPSE immediately provide the J█'s records. *See* DPC, at ¶2; and ADPC, at ¶2.

3.      The Parent was first provided a November 2017 IEP, and related documents, in February 2019, as part of the DOE's disclosure for the impartial hearing and therefore was unable to amend

1

the ADPC in case no. 173606 to add these claims.

4.      This complaint concerns the IEP dated November 20, 2017 and related documents that were first turned over in February 2019, as well as events that transpired after the ADPC was filed. .

5.      Based on the November 2017 IEP, for the 2017–2018 school year the DOE: (a) failed to timely, thoroughly, and appropriately evaluate J████; (b) failed to develop substantively and procedurally valid IEPs for J████; (c) failed to provide a timely and appropriate placement for J████; (d) failed to employ appropriate evaluation, IEP development, and placement procedures with regard to J███; (e) violated the Parents' procedural rights under the IDEA which resulted in their exclusion from the special education process; and (f) failed to implement services for J████. Over, the DOE has failed to provide J████ with a Free Appropriate Public Education ("FAPE").

6.      The allegations contained the DPC and ADPC in case no. 173606 are re-alleged and incorporated herein by reference.

7.      J████ turned three on ████ 2018. He was entitled to start to receive a FAPE as of April 3.

8.      On November 20, 2017, the CPSE apparently held an initial IEP meeting for J████ with the Parent, J████'s "ABA Teacher" from Early Intervention and a DOE administrator and teacher, along with a social worker.

9.      The November 2017 IEP recommended a self-contained preschool special class (8:1+2), for 12-months, along with SLT (5x30x1), OT (3x30x1), PT (3x30x1), and specialized transportation. The IEP rejected an integrated program as insufficient to meet J████'s needs.

10.     The CPSE had conducted a brief observation and a social history interview but did not conduct any evaluations of J████. None of the EI evaluators participated in the IEP meeting. The EI reports that existed were, however, deficient including, among other things, significantly underestimating J████'s cognitive functioning.

11.     The IEP's description of J████'s performance present and goals was repeated verbatim in the subsequent December 2017 IEP and June 2018 IEP.

12.     Further, by November 2017, J████'s functioning and behavior regressed as he did not receive services between the November 2017 IEP and the June 2018 IEP.

13.     The CPSE was unable to locate an appropriate program for J████ due to shortages in the CPSE services and illegal policies and practices of the CPSE The DOE was unable to provide a functionally grouped seat for J████ given his cognitive abilities, level of functioning, social skills and disabilities.  The DOE did not have a program that would have prepared him for kindergarten, helped him to achieve the preschool standards and facilitated appropriate social skills with peer models.

14.      Further, the Parent was not provided a copy of the November IEP until February 2019. No prior written notice ("PWN") was provided.

15.     On December 7, 2017, the CPSE held an IEP reconvene to change the recommended program, as there was no preschool with an appropriate seat in a school.

16.     At the December 2017 meeting, only the Parent, the CPSE administrator and a special education teacher were in attendance.

17.     The 2017 IEP arbitrarily reduced special education instruction recommended for J███ (from 20x60 to 10x60 per week of SEIT); along with SLT (5x30), OT (3x45), and (3x45 PT), on a 12-month basis with transportation. The IEP has a September 1, 2018 implementation date, based on the presumption that EI services would continue until that time.

18.     However, EI refused to provide services to J███ due to the fact that the DOE had illegally denied his sister a FAPE and left her out of school.

19.     The IEP developed at on December 7, 2017 (the "December 2017 IEP") was not provided to the Parent until approximately one-half year after the meeting.

20.     The DOE failed to issue a PWN, as it is the CPSE systemically fails to issue PWN to parents.

21.     Instead, the CPSE provided the Parent with a document called a "Final Notice of Recommendation" ("FNR").  The FNR did not include the legally mandated information that the IDEA required for a PWN and also failed to include an implementation date..

22.     In early-March 2018, the Parent emailed the CPSE and requested that the CPSE begin implementing J███'s IEP. The CPSE failed to do so.

23.     The CPSE indicated that it would accommodate the Parent's request and stated that the team would need reconvene to change J███'s IEP. However, the CPSE took no action until three-months later.

24.     Eventually, an extremely brief meeting was conducted on June 5, 2018 (the "2018 IEP"), with the same participants as the 2017 IEP and the Parent was told services would start immediately.

25.     The resulting 2018 IEP, provided a few days later, is identical to the December 2017 IEP, but for the July 1, 2018 implementation date. The present performance and goals are identical on the November 2017 IEP, December 2017 IEP, and June 2018 IEP.

26.     Again, the DOE failed to issue a PWN.

27.     In creating all IEPs for J███ in 2017 and 2018, the DOE applied a systemic, widespread illegal policy of terminating ABA services that children have on their IESPs when they transition from EI to the CPSE.  Rather than continuing the recommendations of ABA services as per the IESP, the DOE automatically terminated the services, without regard to the student's progress, needs and/or any individualized considerations.

28.     Further, the DOE failed to reevaluate J███ relative to the receipt of ABA services – as per Citywide policy – prior to the termination and substantial change in placement.

29.     The Parent filed a hearing on June 8, 2018, which was designated as case no. 173606.

30.     To date, the DOE has failed to implement the IEP(s) and IHO order(s).

31.     The few services that J███ has received were arranged for by the Parent, and only after an IHO pendency order. However, the family's home situation, shortages in preschool provider/programs in Staten Island, the DOE's payment delays, and the fact that J███'s sister remains out of school has made it impossible for the Parent to find adequate providers. The Parent has been unable to locate providers willing to service both children. The DOE has not offered or provided transportation, and supervision.

32.     Further, the DOE failed to consider its own conduct that caused J███ to lose his EI services. Given that J███ lost his opportunity to receive ABA services based on the DOE's failure to afford a FAPE to his sister, J█████, the DOE should have provided ABA and an increase in services to him.

33.     The DOE refused to consider a dual recommendation of SEIT and a special education program.

34.     In addition to the allegations set forth herein, the additional CPSE IEP that was not previously challenged contain the following substantive and procedural deficiencies:
   a.  J███ was not adequately evaluated prior to the IEP meeting;
   b.  The DOE failed to identify his underlying disabilities;
   c.  1:1 instruction was not recommended;
   d.  ABA, ABA supervision and parent training were not recommended;
   e.  A wrap-around, dual recommendation was not considered or made;;
   f.  The IEP terminated all ABA services and 1:1 instruction from J███'s program as a matter of system-wide policy;
   g.  The 2017 IEP reports erroneous and self-serving statements, in particular, about J████'s then-current services and implementation failures.
   h.  The IEP reports that J███'s behavior impedes learning; however, no behavior supports and goals are included. The DOE failed to conduct a functional behavior assessment ("FBA") and Behavior Intervention Plan ("BIP");
   i.  The DOE failed to conduct adequate testing to determine if J███ has Autism or a related disorder; and did not consider Parent counseling and training;
   j.  The DOE failed to consider and recommend sufficient SEIT, social skills instruction, home-based services or applied behavior analysis;
   k.  The IEP failed to adequately describe J███'s strengths, weaknesses and the ways that his disabilities impact his ability to make progress in cognitive, developmental, academic, and functional areas; and provides insufficient information about J████'s needs; most notable, his social-emotional, behavior, language, speech, communication, sensory functioning.

l.  The team did not consider if J█████ had made progress or meet any EI goals.

m.  The IEP team pre-determined the program and placement recommendations and utilized blanket policies of the DOE instead of individualizing J████'s IEP and placement;

n.  The IEP team was not properly constituted; upon information and belief, the team did not have required members and, if those individuals were present in name/title, they did not possess the required knowledge, training, or independence to properly formulate a legal IEP. Since the team was constrained by what the DOE offers, none of the team's members were able to fulfill their legally mandated role. Further, there was no individual there qualified with an expertise in autism. Moreover, there was no team member who had the qualifications to serve as a district representative; none of J████'s providers or proposed providers attended.

o.  J████'s IEP failed to include peer-reviewed research-based methods, although those methods are feasible; and the management needs are generic.

p.  The IEP's goals and objectives were insufficient, vague, boilerplate, not measurable and not individually tailored to meet J████'s needs;

q.  The goals and services failed to sufficiently address the myriad of ways that J████'s disability impacts his academic and functional performance in the following areas: academics, ADL skills, behavior, focusing/attention, behavior, communication, social interaction, generalization, self-care skills, community integration, and technology. Further, they failed to sufficiently address all the ways in which his disabilities impacted his ability to make progress in the general curriculum;

r.  The DOE did not recommend sufficient services to enable J████ to meet pre-kindergarten standards;

s.  The IEP did not offer sufficient speech and language therapy, occupational therapy, physical therapy and assistive technology and training;

t.  The DOE failed to recommend sufficient amount of instruction.

u.  The DOE failed to consider an integrated program and a dual recommendation;

v.  The IEP team failed to consider and recommend appropriate Assistive Technology;

w.  The IEP team wrote the IEP without adequate input from the Parent, and the Parent was deprived of the ability to meaningfully participate in the IEP development process;

x.  The IEP does not include positive behavioral interventions and support services or a behavior intervention plan even though J████'s behavior significantly interferes with his ability to make progress;

y.  The IEP failed to include parent training;

z.  The information in the IEP is perfunctory, confusing, and contradictory.

aa. The DOE violated the LRE.

35.     In addition, the November 2017 IEP recommendations establish an additional grounds for the Parent to challenge the subsequent 2018 IEP – i.e., the DOE agreed that J████ required a full-day program but only offered the Parent ten SEIT hours as a "substitute" of the lack of availability of an appropriate program.   The ten SEIT hours were not similar or sufficient based on J████'s needs.

36.     Further, all of J████'s IEPs failed to recommend ABA, 1:1 instruction, and parent training.

**Events That Occurred Following the ADP in 173606**

37.     Among the relief the Parent requested in the DPC and ADPC was for the CPSE to immediately implement services for J███.

38.     The DOE did not respond to the DPC, did not conduct a timely resolution meeting, and–most incredible–the DOE refused to implement the 2018 IEP, developed by its CPSE, without a pendency order (the DOE would not agree to implement the IEP, even after the IEP's July 1, 2018 implementation date).

39.     Therefore, J███ went without special education services.

40.     On September 12, 2018, the IHO issued a stay-put order.

41.     The DOE did not timely and fully implement the pendency order.

42.     In the fall, J███ was receiving SEIT and his OT, PT and SLT services from Sensory Freeway.

43.     In November, Sensory Freeway advised the parent that it could no longer provide services to J███ because it was unable to handle the behavior of J███'s sister, J██████, who was out of school.

44.     Further, J███'s SEIT resigned around the same time.

45.     J████ was out of school without services, in violation of his pendency from November 2018 to April 2019.

46.     During this time, the parent took herculean efforts to try to obtain services: she sent daily emails to the DOE requesting assistance, she made scores of phone calls to potential providers, she conducted internet searches, and she made multiple inquires looking for service providers in Staten Island and the nearby areas. She was unable to find any services who would come to her home and/or that could provide center-based support.

47.     Further, as the pendency order did not contain transportation and J██████ was also out of school, the parent had no options.

48.     She was unable to be at two places with each of her children at the same time.

49.     The DOE eventually agreed to fund tutoring services for J██████ at Lindamood Bell. Although the DOE was supposed to fund a travel aide, there was an extreme delay in implementing the aide.  As a result, the parent had to take J███ with her to LMB, wait there in Brooklyn for several hours, and return home.

50.     The Parent eventually filed a state complaint with the New York State Education Department ("NYSED").  NYSED determined that the DOE had violated J███'s pendency and directed the

DOE to correct the situation.

51.     In addition, in October and November 2018, Bridge Kids New York conducted an FBA for J████. The report recommends, among other things: a BIP, 1:1 ABA, BCBA/LBA supervision, parent training, a neuropsychological evaluation.

52.     Eventually, the Parent identified the McCarton Center as an available program to deliver ABA services, and related services of OT, PT and SLT. However, McCarton Center would only agree to accept J████ if the DOE provides funding every 30 days. Further, transportation would be required.

53.     On February 27, 2019 and March 1, 2019, the Parent wrote to the DOE advising that she disagreed with the DOE's most recent evaluations and requesting a neuropsychological assessment but the DOE has not agreed to fund the assessment.

54.     On February 28, 2019, a hearing date was held in 173606 requesting funding for the McCarton Center and seeking an order directing the DOE to fund the compensatory services. At the hearing, the DOE did not assert that it had service providers available for the child.    The DOE did not object to the funding of the McCarton Center.

**Retaliatory Call to ACS on March 11, 2019**

55.     On March 11, 2019, despite the pending state complaint to NYSED and the pending request for the IHO to fund McCarton, late at night, after 11p.m., ACS made an emergency visit.  ACS advised the Parent that they had received an emergency call asserting that the Parent was not cooperating with DOE's efforts to arrange, *inter alia*, home-based speech and OT service providers that the DOE had made available.

56.     The Parent asserts that this call made to retaliate against her based on her efforts to assert her rights to have the order enforced.

57.     As a result, the Parent had an open ACS case.

58.     The ACS case was deemed to be unfounded.

**Interim Order – Implementation Delays**

59.     On March 12, 2019, he IHO issued an interim order directing the DOE to provide ABA at McCarton, with OT, SLT and PT, as well as transportation, with a qualified aide. Further, the order directed the DOE to fund J████'s compensatory pendency services at McCarton.

60.     The DOE did not timely implement the order, despite the parents repeated emails and requests.

61.     J████ started to receive some of his stay-put services at McCarton the week of April 8, 2019. He was attending there until the break on April 19, 2019.

62.     In particular, the DOE did not timely or appropriately staffed the travel aide or physical therapy.

63.     The DOE did not identify a properly qualified aide to take J▮▮ to and from the program.

64.     **On May 17, 2019, McCarton advised the Parent that it would not longer be able to provide services to J▮▮.**

65.     **On May 20, 2019, Parent's counsel advised the DOE that the DOE would need to locate alternative providers.**

66.     **On March 26, 2019, NYSED found that the DOE was out of compliance with its pendency mandate.  NYSED directed the DOE to ensure that services were implemented as of May 31, 2019, as well as to submit the procedures for implementing pendency.**

67.     The Parent asserts that she has lost income as a result of the DOE's actions over the past year.

68.     Further, although the DOE wants to schedule an IEP meeting, the DOE has failed to engage in the IEP process in accordance with the IDEA.  Among other things, the DOE has failed to adequately coordinate the schedule with the parent and take into account the fact that the Parent is dealing with two serious emergency situations with her children and would have to pull them out of services in order to attend a meeting at the times/days that the DOE has proposed. The children should not miss their services to accommodate the DOE's schedule.  Rather than try to coordinate a time with the Parent the DOE has unilaterally scheduled appointment.  In addition, the DOE has failed to ensure that J▮▮ is appropriately and thoroughly evaluated, failed to provide legally sufficient Prior Written Notice and failed to ensure that an appropriate team is in place that has expertise in J▮▮'s disability and who are free from illegal blanket restrictions in terms of their ability to make recommendations based on the services that the DOE offers.

69.     J▮▮ is a qualified individual with a disability pursuant to Section 504 and the ADA and has been subjected to discrimination by the DOE and New York City based on his disability and by association with his sister, an individual with a disability.

70.     The DOE has made decisions about his special education services based upon blanket policies, practices and availability of services. The DOE and City's conduct in violation of Section 504 and the ADA is gross, reckless, and intentional.

**PROPOSED RESOLUTION**

71.     The Parent respectfully requests that the IHO issue an order that contains, at a minimum, the following findings and relief:

   a.   A finding that J▮▮ has been denied FAPE during the 2017-2018 and 2018-2019 school years.

b. A declaration of rights in favor of the Parent, declaring the conduct alleged herein to be illegal and in violation of the IDEA, the ADA, Section 504 and New York State Education law.

c. **Immediate provision of and/or funding for J████'s stay-put program and transportation as ordered by the IHO and compensatory pendency services at appropriate providers.**

d. Compensatory education in the form of funding at an enhanced rate and/or reimbursement to the Parent for the following:

    i. 1:1 instruction;

    ii. ABA Supervision;

    iii. PT, SLT, and OT;

    iv. Assistive technology and AT training;

    v. Compensatory Parent Counseling.

    vi. Transportation via car service to and from any services with an appropriately trained travel companion.

e. Prospective funding for a full-day program that provides 1:1 instruction (40 hours), ABA, ABA supervision, OT, PT and SLT, a 52-week school year, that includes in-school and home-based services, Parent training, and car service transportation with an appropriately trained travel companion that will prepare him for kindergarten.

f. Funding for a program or service provider to fulfil (d).

g. Payment and/or reimbursement to the parent for her hourly rate as J████'s travel aide during the time that the DOE did not provide travel services, including payment within 30 days of invoice submission.

h. Reimbursement to the parent for any travel-related expenses she incurred, as well as lost income.

i. A legally valid IEP that comports with the procedural aspects of the IDEA that includes OT, PT, SLT, 1:1 instruction, ABA, transportation, tutoring, ABA supervision, home-based services and an appropriate private placement that will prepare J████ for kindergarten.

j. A comprehensive set of independent evaluations at DOE expense, including but not limited to a neuropsychological assessment, an educational assessment, a speech and language evaluation, an occupational therapy evaluation, a physical therapy evaluation, a visual processing evaluation and any other evaluations necessary to assess J████ in every area of disability.

k. The DOE should continue to prospectively fund car service transportation with a qualified travel companion.

l. Given the shortages and lack of program, there should be no rate cap and the DOE should be obligated to fund the rate necessary to facilitate implementation of services.

m. The DOE should be held responsible for providing qualified service providers,. The Parent may elect to select providers, at enhanced rates; however, the DOE cannot unilaterally delegate this obligation onto the Parent.

Please contact Elisa Hyman at elisahyman@gmail.com or 646-572-9064 to schedule and continue this hearing.

Respectfully submitted,

THE LAW OFFICE OF ELISA HYMAN, P.C.


*/s/ Elisa Hyman*

_____

Elisa Hyman

# Exhibit B

## SECOND INTERIM ORDER MODIFYING PENDENCY

Case Number:         173606

Student Name:       J██ V█████

Date of Birth:        █████, 2015

District:             31

Hearing Requested By:  Parent

Hearing Officer:      Jeffrey J. Schiro, Esq.

1

NAMES AND TITLES OF PERSONS WHO APPEARED

For the Student:

LAURA D. BARBIERI, ESQ., Attorney

For the Department of Education:

MIN BAHAROV, ESQ., Attorney

## I.  SPECIAL EDUCATION & RELATED SERVICES

A.  Special Education – the student shall receive ten (10) hours per week of 1:1 ABA therapy.

    1.  As of the date of this Interim Order, the parent has identified Bridge Kids to provide the student with 1:1 ABA therapy, Monday through Friday, from 9:00 a.m. until 11:00 a.m., at a rate of $215 per hour.  The DOE shall fund 1:1 ABA therapy provided to the student by Bridge Kids at a rate of $215 per hour for as long as Bridge Kids is available to provide service to the student.

        (a) In the event that Bridge Kids becomes unavailable or discontinues service, the parent shall notify the DOE of such event in writing and shall inform the DOE of whether she elects for the DOE to secure an alternate ABA provider or secure her own ABA provider.  If the parent elects to secure her own ABA provider, the DOE shall fund such provider at a reasonable market rate.

B.  Related Services – the DOE shall provide the student with the following related services or, in the alternative, fund providers of the parent's selection for mandated related services at reasonable market rates.  If a related service provider has a current contract with the DOE, then the related service provider shall be compensated at the contracted rate:

    1.  Individual (1:1) Occupational Therapy, three (3) times per week for forty-five minutes (45) per session;

    2.  Individual (1:1) Speech and Language Therapy, four (4) times per week for forty-five minutes (45) per session;

    3.  Individual (1:1) Physical Therapy, three (3) times per week for forty-five (45) minutes per session.

## II.  TRANSPORTATION

A.  Car Service – the DOE shall provide or fund door-to-door car service transportation of the student to and from all special education instruction and related services manded in this Interim Order.

    1.  If such car services transportation becomes unavailable or discontinues service, then the parent shall notify the DOE of such event in writing and the parent may select an alternate car service for the student, either until the original car service becomes available, or as a permanent alternative.

B.  Transportation Aide – the DOE shall provide or fund an appropriately trained transportation aide to supervise the student during transport to and from special education instruction and related services delivered outside of the student's home.

    1.  "Appropriately trained" means that such transportation aide shall have at least the same qualifications, safety and CPR training, fingerprinting, and criminal background check as required under the Education Law and State Regulations of transportation attendants, monitors and paraprofessionals employed by the DOE.

## III.  PAYMENT OF PROVIDERS

A.  The DOE shall ensure that all instruction, related services, transportation and transportation aide providers are promptly paid within thirty (30) days of its receipt of monthly invoices of services rendered to the student by said providers.

B.  Where necessary, the parent shall sign all documentation required for instruction, related services, transportation and transportation aide providers to be promptly paid by the DOE for services delivered to the student pursuant to this Interim Order.

## IV.  EFFECTIVE DATE & IMPLEMENTATION

A.  The obligations contained in this Interim Order shall be made retroactive to May 17, 2019, the date that the prior ABA therapy provider, *i.e.*, McCarton, indicated that it would not longer provide pendency services to the student.

B.  The DOE shall implement this Interim Order within three (3) business days of the date of this Order.

C.  All prior Interim Orders issued by the undersigned in this matter are hereby rescinded.

**IT IS SO ORDERED**

Dated:        September 6, 2019

                                              */s/ Jeffrey J. Schiro*
                                              Jeffrey J. Schiro, Esq.
                                              Impartial Hearing Officer