19-CV-5451 (AT)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

L.V. on behalf of herself and her minor child, J.V.2.,

                                              Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                                              Defendant.

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

**JAMES E. JOHNSON**
Corporation Counsel of the City of New York
Attorney for Defendant New York City Department of Education
100 Church Street
New York, New York  10007

Of Counsel:  Carolyn E. Kruk
Tel:  (212) 356-0893
Matter No. 2019-040651

## PRELIMINARY STATEMENT

Plaintiffs L.V. and J.V.2., parent and student, allege in their Second Amended Complaint (SAC) that the New York City Department of Education (DOE or "Defendant") violated the Individuals with Disabilities Education Act (IDEA), their due process rights, various sections of the New York Education Law (NYEL); discriminated against them in violation of the ADA and Section 504 of the Rehabilitation Act ("Section 504" or RA); retaliated against Plaintiff L.V. in violation of Section 504; and intentionally inflicted emotional distress. Plaintiffs' SAC seeks enforcement of outdated pendency orders (dated September 2018 and March 2019), declaratory and injunctive relief that mirrors what they seek in their pending administrative Due Process Complaint (DPC), and $10 million in damages.

In their Opposition, Plaintiffs reverse course and no longer allege that Defendant denied Plaintiff J.V.2. a free appropriate public education (FAPE), no longer challenge J.V.2.'s IEP, and no longer dispute the amount or nature of services he is mandated to receive. See Plaintiffs' Opposition, Dkt. No. 56 ("Opp.") at pp. 13-15, 17. Instead, Plaintiffs now limit their claim to seeking enforcement of the Impartial Hearing Officer (IHO)'s current pendency order, dated September 2019, which they acknowledge that they fail to reference in their SAC. Opp. at pp. 13, 15. At the same time, Plaintiffs fail to successfully rebut Defendant's arguments that Plaintiffs' claims under the ADA and Section 504 should be dismissed as they do not allege that any failure to comply with pendency orders was *because of* J.V.2.'s disability, that Plaintiffs' ADA and RA claims fail as they do not sufficiently allege that any discrimination is due to J.V.2.'s disability, that Plaintiffs are successfully availing themselves of the IDEA's remedial process – and the IHO's lack of enforcement powers are irrelevant to such a claim, and finally, that their state law claims should be dismissed as they failed to seek leave to file a late notice of

claim and, in any event, no private right of action exists under the cited provisions of the NYEL and a claim of intentional infliction of emotional distress cannot be brought against Defendant.

In support of their Opposition, Plaintiffs' counsel also filed a declaration purportedly signed by L.V. See Dkt. 57. However, as the declaration is unsigned by its maker, it has no evidentiary value. See 28 U.S.C. § 1746.

## ARGUMENT

### POINT I

**PLAINTIFFS EXPRESSLY ABANDON THE MAJORITY OF THEIR CLAIMS UNDER THE IDEA. PLAINTIFFS NOW SEEK TO ENFORCE THE PENDENCY ORDERS ALONE. HOWEVER, THEIR FAILURE TO REFERENCE THE SEPTEMBER 2019 PENDENCY ORDER OR HOW DEFENDANT IS FAILING TO COMPLY WITH SUCH IS FATAL TO THEIR IDEA CLAIM.**

As mentioned above, in a reversal of their position, Plaintiffs state in their Opposition that they do not seek relief as a result of any alleged denial of FAPE, Opp. at p. 14. Plaintiffs also expressly state that they do not challenge the "quality or quantity" of J.V.2.'s services mandate, "the CSE's decisions", "J.V.2.'s IEP", or "whether [the] benefits provided were appropriate," Opp. at pp. 15, 17. In other words, Plaintiffs have abandoned these claims. Indeed, when a party represented by counsel expressly disclaims further pursuit of its action in briefs submitted with the Court, it constitutes a "binding abandonment of plaintiffs' claim[s]." In re Vivendi Universal, 02-CV-5571, 2009 U.S. Dist. LEXIS 55864, *27 (July 1, 2009) (citing Conboy v. AT&T Corp., 241 F.3d 242, 250 (2d Cir. 2001)); Arbercheski v. Oracle Corp., 05-CV-591, 2005 U.S. Dist. LEXIS 20627, at *3 (S.D.N.Y. Sept. 19, 2005) ("[W]here a plaintiff expressly states in motion papers that her complaint does not allege a particular claim, such a statement 'constitutes an express and binding abandonment' of the claim."). As a result of this express abandonment,

Plaintiffs' claims under the IDEA seeking declaratory and injunctive relief – to the extent that they challenge anything other than the implementation of the pendency orders – should be dismissed. This abandonment should result in the dismissal of Plaintiffs' claims that Defendant denied J.V.2. a FAPE in violation of the IDEA, failed to conduct certain assessments of J.V.2., improperly constituted the CPSE, and failed to mandate the proper education program and related services to J.V.2.. See SAC ¶¶ 213-221. This abandonment should also result in the dismissal of Plaintiff's request for relief to the extent that it mirrors the relief they are currently seeking before the IHO, as set forth in their May 2019 Due Process Complaint. Compare SAC Wherefore clause para. d(a)-(m) with May 2019 DPC (Baharov Decl., Exh. A at ¶ 71(a)-(m)).

In their Opposition, Plaintiffs state that they "simply want to receive the services required by the [IHO's pendency] orders". See Opp. at pp. 14, 15. At the same time, however, Plaintiffs admit that the SAC does not mention the current pendency order or provide any details regarding Defendant's alleged "intermittent compliance" with the IHO's orders. See Opp. at pp. 15, 17 (alleging that Defendant has been engaging in "intermitted compliance" with the orders). This omission is fatal to Plaintiffs' claim because, as discussed in Defendant's Memo of Law, the IHO's Second Interim Order Modifying Pendency dated September 6, 2019 ("September 2019 Pendency Order") expressly rescinded "[a]ll prior [pendency] Interim Orders issued". See Defendant's December 6, 2019 Memorandum of Law, Dkt. 51 (hereinafter, "Memo of Law") at p. 11 (citing Baharov Decl. at Exhibit B, Section IV(C)). In order to cure these deficiencies, Plaintiff request permission to amend their SAC.

Although permission to amend is typically freely given, Plaintiffs request should be denied because they were repeatedly put on notice of this deficiency and declined to correct it. In particular, Plaintiffs were informed of this deficiency in Defendant's October 4, 2019 letter to

Plaintiffs' counsel,[1] in Defendant's October 18, 2019 pre-motion letter, Dkt. 45, and the Memo of Law, Dkt. 51 at p. 6. Despite repeated notifications and opportunities to amend the SAC, pursuant to Judge Torres's "Individual Practices in Civil Cases" (hereinafter, "Individual Practices") and Federal Civil Procedure Rule 15(a)(1)(B), Plaintiffs declined to correct this deficiency. In so doing, Plaintiffs ignored the express warning in Judge Torres's Individual Practices that "[i]f the plaintiff elects not to amend its pleading, no further opportunities to amend to address the deficiencies identified by the motion to dismiss will ordinarily be granted absent good cause." See Individual Practices at III.B.iv. Plaintiffs do not articulate any good cause for their failure to correct this deficiency earlier. See, generally, Opp. As such, Plaintiffs belated request to amend their complaint for the third time should be denied.

## POINT II

**PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO SUPPORT A PLAUSIBLE INFERENCE OF DISCRIMINATION BASED ON J.V.2.'S DISABILITY, OR BAD FAITH OR GROSS MISJUDGMENT IN DEFENDANT'S ALLEGED INTERMITENT COMPLIANCE WITH THE IHO'S ORDERS.**

**(A)  ADA and RA**

As discussed in Defendant's Memo of Law (at p. 12), the ADA and Section 504 address discrimination against individuals "*by reason of [their] disability*," E.H. v. Bd. of Educ. of Shenendehowa Cent. Sch. Dist., 361 F. App'x 156, 161 (2d Cir. 2009)(emphasis added). Moreover, in the education context, a discrimination claim predicated on the argument that a disabled student was denied access to a free appropriate education, as compared to the free

---

[1] As per III.B.ii of Judge Torres's "Individual Practices in Civil Cases", Defendant's letter was not submitted to the Court.

4

appropriate education non-disabled students receive, requires proof of "*bad faith or gross misjudgment*." C.L. v. Scarsdale Free Union Sch. Dist., 744 F.3d 826, 841 (2d Cir. 2014) (internal citations and quotation marks omitted)(emphasis added).

In their Opposition, as discussed above at Point I, Plaintiffs admit that they *do not disagree* with "the CSE's decisions", "J.V.2.'s IEP", or "whether [the] benefits provided were appropriate." Opp. at 17 (emphasis added). Plaintiffs claim that they are being "denied access to *any* services or benefits". Id. (emphasis in original). At the same time, Plaintiffs' Opposition expressly acknowledges that Defendant has made efforts to comply with the pendency orders. See Opp. at 17 (noting Defendant's "intermittent compliance" and "inconsistent compliance"). Plaintiffs do not allege that the alleged intermitted or inconsistent compliance with pendency orders was "*by reason of* [J.V.2.'s] disability", which is fatal to their discrimination claims. E.H., 361 F. App'x at 161 (emphasis added).

Likewise, Plaintiffs make only a single conclusory statement in the SAC that Defendant engaged in "bad faith or gross misjudgment" in its actions. SAC ¶ 255.  They do not articulate what action or inaction on the part of Defendant constituted bad faith or gross misjudgment. Maus v. Wappingers Cent. Sch. Dist., 688 F. Supp. 2d 282, 302 (S.D.N.Y. Feb. 9, 2010).

Accordingly, as Plaintiffs fail to allege facts that suggest that Defendant's alleged intermittent compliance with IHO orders was because of J.V.2.'s disability and was in bad faith or the result of gross misjudgment, Plaintiffs' ADA and Section 504 claims should be dismissed.

**(B)     Section 504 Retaliation Claim**

As an initial matter, Plaintiffs' Opposition (at p. 18) misrepresents the Second Circuit's decision in Phifer, which held that Rooker-Feldman doctrine did not bar some of plaintiff's claims. Phifer v. City of New York, 289 F.3d 49, 58 (2d Cir. 2002). Moreover, the Second Circuit did not hold that plaintiff's claims were adequately pled. Id. Upon remand, the Southern

District dismissed plaintiff's claim that the doctors, who were mandated reporters under the Social Services Law, racially discriminated against plaintiffs when they reported a case of alleged child abuse or maltreatment. The Court held that plaintiff failed to sufficiently allege that the doctor defendants acted in bad faith. Phifer v. City of New York, 99-CV-4422, 2013 U.S. Dist. LEXIS 6159, at *22-23 (S.D.N.Y. April 14, 2013) (dismissing plaintiff's racial discrimination claim in light of plaintiff's "wholly conclusory nature of the allegations of racism, the absence of any supporting details, and the findings of the family court").

Second, to the extent that Plaintiffs argue that the fact that they allege procedural and substantive due process violations is relevant to the Court's analysis of whether they state a Section 504 retaliation claim (Opp. at pp. 18-19), they are mistaken. Their failure to cite to any case law supporting such an assertion is telling.

Third, as argued in Defendant's Memo of Law (at p. 15), Plaintiffs' conclusory allegation that DOE "acted maliciously because it was aware that the allegations [of educational neglect] were false and misleading" and "designed solely to harass and retaliate" are "conclusory statements" that the court need not accept, particularly in light of Defendant's staff's legal obligation to report educational neglect. Phifer, 2013 U.S. Dist. LEXIS 6159, at *22-23.

Finally, as discussed above at Point II.A, Plaintiffs fail to adequately allege that Defendant's call to the State Central Register was motivated by discriminatory animus "*based on* [] plaintiff[] [J.V.2.'s] disability." Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 115 (2d Cir. 2001) (emphasis added). Thus, Plaintiffs' retaliation claim should be dismissed.

### POINT III

**PLAINTIFFS' DUE PROCESS CLAIM FAILS BECAUSE THEY ARE PARTAKING IN THE IDEA'S REMEDIAL PROCEDURES AND THEIR ALLEGATION THAT IMPARTIAL**

6

## HEARING OFFICERS CANNOT ENFORCE THEIR ORDERS IS IRRELEVANT.

As discussed in Defendant's Memo of Law (at pp. 16-17), where a plaintiff brings IDEA and Section 1983 claims simultaneously, as Plaintiffs do here, a plaintiff must prove that a constitutional violation occurred "outside the scope of the IDEA." A.K v. Westhampton Beach Sch. Dist., 17-CV-0866, 2019 U.S. Dist. LEXIS 167085 at *44 (E.D.N.Y. Sept. 27, 2019) (citations omitted). As detailed in Defendant's Memo of Law (at pp. 3-6, 16-17), constitutional due process requirements are satisfied by the procedural safeguards provided by the IDEA and New York implementing regulations. See, e.g., Schafer v. Hicksville Union Free Sch. Dist., 06-CV-2531, 2011 U.S. Dist. LEXIS 35435, at *17 (E.D.N.Y. Mar. 31, 2011) ("[The] [p]laintiffs cannot satisfy the second prong of the analysis because they cannot show . . . that the post-deprivation remedy under IDEA was inadequate. The IDEA hearing procedure satisfies procedural due process requirements."); Does v. Mills, 04-CV-2919, 2005 U.S. Dist. LEXIS 6603, at *9 (S.D.N.Y. Apr. 18, 2005) ("In addition, in the context of IDEA impartial hearings, numerous federal courts have held that constitutional due process requirements are satisfied where, as here, the parties are provided the procedural safeguards found in the IDEA and its implementing regulations."). Here, Plaintiffs have been provided with numerous hearings before an IHO and granted pendency orders, and Plaintiffs do not allege that they are not bring provided the procedural safeguards found in the IDEA or its New York implementing regulations. Thus, Plaintiffs' argument that the IHO "is without authority or jurisdiction to enforce" orders and that the administrative process is futile (Opp. at p. 19) is irrelevant and their 14th Amendment due process claim should be dismissed.

## POINT IV

**PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED BECAUSE NO PRIVATE RIGHT OF ACTION EXISTS UNDER NEW YORK EDUCATION LAW, AND PUBLIC POLICY PRECLUDES A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST A PUBLIC ENTITY.**

Plaintiffs' Opposition fails to make a convincing argument that Sections 3202, 3203, 4401, 4404, and 4410 the NYEL provide a private right of action. Without citation, Plaintiffs argue that "public policy and the specificity of Defendant's obligations pursuant to State law should therefore permit Plaintiffs to enforce these laws by access to the Court." Opp. at p. 20. Moreover, Plaintiffs fail to identify any specific substantive or procedural obligation that Defendant failed to meet. Moreover, as discussed in Defendant's Memo of Law (at p. 17, n.7), the IDEA, and not the NYEL, creates a private right of action to enforce a child's right to special education and related services.

The Opposition also fails to address Defendant's argument that public policy bars Plaintiffs' claim of intentional infliction of emotional distress against a governmental entity, such as Defendant. Instead, Plaintiffs argue, again in a conclusory manner, that Plaintiff parent has "endured years of outrageous conduct by Defendant given its blatant and willful refusals to provide her child with special education services". Opp. at p. 20. Even if Plaintiffs' claims were not barred by public policy (which they are), Plaintiffs' allegations that Defendant has been intermittently complying with the IHO's orders are not "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Tebbenhoff v. Elec. Data Sys. Corp., 244

8

F. App'x 382, 384 (2d Cir. 2007). Accordingly, Plaintiffs' purported state law claim under the NYEL and for intentional infliction of emotional distress should be dismissed, with prejudice.

### POINT V

**PLAINTIFFS HAVE LONG BEEN ON NOTICE OF THE NEED TO REQUEST PERMISSION TO FILE A LATE NOTICE OF CLAIM, THUS THE COURT SHOULD NOT DEFER ITS DECISION ON THE INSTANT MOTION UNTIL PLAINTIFFS MAKE SUCH A REQUEST.**

Lastly, as discussed in Defendant's Memo of Law (at p. 18), New York law requires that a plaintiff plead statutory compliance with all notice of claim requirements. In their Opposition, Plaintiffs admit that their SAC "misstated the service recipient" of their notice of claim. Opp. at 21. Even if this pleading requirement is corrected, Plaintiffs also admit that they did not seek leave to file a late notice of claim. Id. Instead, they ask this Court to "defer any decision" dismissing their state law claims "until proof of service on the City is its action is provided." Id. The Court should reject Plaintiffs proposal and dismiss their state law claims.

Plaintiffs allege that they filed a late notice of claim on the City Comptroller on August 21, 2019. SAC ¶ 33. The SAC is silent regarding whether they sought and were granted leave to file a late notice of claim. See, generally, SAC. Like their failure to mention the September 2019 Pendency Order, Defendant brought this deficiency to Plaintiffs' attention in its October 4, 2019 letter to Plaintiffs' counsel, in its October 18, 2019 pre-motion letter, Dkt. 46, and for a third time in its Memo of Law in support of the instant motion, Dkt. 51. Nonetheless, Plaintiffs did not request leave to file a late notice of claim. As Plaintiffs have had months to seek leave from state court to file a late notice of claim, the Court should not defer its decision of the instant motion until they make such a motion. Accordingly, Plaintiffs' state law claims should be dismissed.

9

## **CONCLUSION**

Based on the foregoing, Defendant respectfully requests that its motion to dismiss the SAC be granted in its entirety, and that the Order of dismissal apply to any substantively identical complaints subsequently filed or identified by the Court.

Dated:      New York, New York
               January 23, 2020

                                        JAMES E. JOHNSON
                                        Corporation Counsel of the
                                          City of New York
                                        Attorney for Defendant New York City Department
                                          of Education
                                        100 Church Street, Room 2-192
                                        New York, New York 10007
                                        (212) 356-0893
                                        ckruk@law.nyc.gov

                             By:     s/
                                          Carolyn E. Kruk
                                          Assistant Corporation Counsel