UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

L.V. ON BEHALF OF HERSELF AND HER MINOR
CHILD, J.V.2,

                       Plaintiffs,          1:19-cv-05451

- Against -

**DECLARATION OF L.V.
IN SUPPORT
OF PLAINTIFF'S
APPLICATION FOR
EMERGENCY RELIEF**

NEW YORK CITY DEPARTMENT OF EDUCATION,

                       Defendants.
_____

L.V. DECLARES UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. §1746 THAT THE FOLLOWING IS TRUE AND CORRECT:

1. I am the mother and legal guardian of J.V.1 and J.V.2. We reside in public housing in Staten Island, New York operated by the New York City Housing Authority ("NYCHA").

2. In November 2017, the New York City Department of Education ("the Department") held an IEP meeting for my daughter, J.V.1. The Committee on Special Education ("CSE") deferred J.V.1's case to the Department's Central Based Support Team ("CBST") to identify a Nonpublic School ("NPS") Placement. J.V.1 was left without a school placement and without home instruction while the CBST commenced a search for an NPS placement.

3. Around the same time, in November 2017, my son and younger child, J.V.2, was receiving home-based services through New York City's Early Intervention Program for his developmental delays. He was two-and-a-half years old at the time. I referred J.V.2

1

to the Department's Committee on Preschool Special Education ("CPSE") for evaluations because J.V.2 would be aging out of Early Intervention services by age three, and he was still far behind developmentally.

4. The CPSE held an IEP meeting for J.V.2 in November 2017 and recommended a full-day special preschool program, which I agreed with. However, the CPSE convened again on December 7, 2017, and unilaterally changed the recommendation from a full-day school program to home-based instruction and related services. In December 2017, instead of a full-day preschool program, the CPSE recommended a 12-month program of 10 hours per week of Special Education Itinerant Teacher ("SEIT") services, specialized transportation, 2.5 hours of one-to-one speech therapy per week, 1.5 hours of one-to-one occupational therapy, and 1.5 hours of one-to-one physical therapy, to be implemented on September 1, 2018. I believe the reasoning behind the Department's unilateral change was the unavailability of a full-day preschool program. The Department never provided me with a Procedural Safeguards Notice, so I did not know that I had the right to pursue due process to enforce my son's right to an appropriate education.

5. At some point during the spring of 2018, J.V.2's Early Intervention Program ceased to provide services to J.V.2 at home. The Early Intervention providers said that my daughter J.V.1, who was six-years old at the time, was too disruptive during J.V.2's Early Intervention sessions in my tiny apartment. In March 2018, I emailed a CPSE representative asking for the Department's recommended preschool special education services to be initiated earlier than the projected September 1, 2018 start date for J.V.2.

6. In May 2018 and June 2018, I filed due process complaints for J.V.1 and J.V.2. J.V.1's due process complaint pertains to the 2016-2017 and 2017-2018 school years – her

2

kindergarten and first grade years. J.V.2's due process complaint relates to the 2017-2018 and 2018-2019 school year—his preschool and pre-kindergarten years. Since then, the Hearing Officers in those cases have issued multiple interim orders on pendency. Unfortunately, the Department has failed to comply with them.

7. Under the pendency orders issued in my children's cases, my children are entitled to special education instruction and related services. J.V.1 is entitled to 40 hours per week of Applied Behavior Analysis ("ABA")/tutoring/Special Education Teacher Support Services ("SETSS"), five hours per week of speech and language services, three hours per week of physical therapy, three hours per week of occupational therapy, and appropriate and safe roundtrip transportation, all at current market rates. J.V.2 is entitled to 10 hours per week of ABA therapy, three 45-minute sessions of individual occupational therapy and physical therapy, and four 45-minute sessions of individual speech and language therapy, as well as special transportation in the form of door-to-door car service and a transportation aide, all at reasonable market rates, with payments made to providers within 30 days of rendering services.

8. The CPSE did not convene to review J.V.2's IEP until June 5, 2018 even though I sent in a request back in March 2018. He turned three-years old in April 2018. On June 5, 2018, the Department revised the start date for J.V.2's preschool home-based services to July 1, 2018 instead of September 1, 2018.

9. Even with the pending due process complaints, I continued to send multiple emails to various administrators at the Department in an effort to resolve the matter. I rarely received responses back in return. When I did receive a response, it was not helpful toward getting my children the services they need.

10. On more than one occasion, I was informed by the Department's representatives that no provider wanted to work in my zip code. I interpreted these statements to mean that my children would be deprived of special education because my children and I lived in a NYCHA housing project.

11. In January 2019, I notified the Department that I had identified a center called Lindamood-Bell to provide a portion of J.V.1's instructional hours under the pendency order. I asked the Department to provide special transportation services so that J.V.1 can be safely transported to and from the tutoring center. I also asked for prospective funding of transportation expenses so that I could make the transportation arrangements myself without having to go through an administrator of the Department. I was informed that I could only receive prospective funding if I completed a W-9 form, which is reserved for business owners and independent contractors. I believe the Department's actions were discriminatory against me as a single, low-income parent. The Department's delay in providing appropriate transportation, as well as its hindering me from making my own transportation arrangements through prospective funding, prevented my daughter from receiving timely services.

12. I have tried everything, including filing a complaint with the New York State Education Department for J.V.2. The State Education Department found the New York City Department of Education to be at fault. Irrespective of that finding, the State Education Department seemed powerless to enforce compliance with the Hearing Officers' Orders.

13. On or about March 11, 2019, at 11:40 pm, I received a knock on the door to my apartment. The individual at my door said that he was from the Administration for Children's Services ("ACS"), New York City's child protective service agency. I was

shocked and scared.  I allowed the individual inside to inspect my apartment and observe my children sleeping.  He told me that he received an emergency call indicating that my children were not receiving related services at home.

14. After hearing this explanation for the ACS referral, I became very upset.  I strongly suspect that a representative from the Department initiated the ACS referral.  I believe the purpose of the Department's ACS referral was to intentionally malign my character in response to my exercise of my due process rights under the special education laws.  I have only sought an appropriate delivery of special education services for my children in the least restrictive environment.

15. After some months, I received written notification from ACS that the neglect claim lodged against me was unsubstantiated and unfounded.  But prior to that finding, I had to subject my children to private interviews with ACS caseworkers, visits to ACS' offices, and inspections of my apartment.  I was subject to scrutiny for no reason other than that I exercised my due process rights under the law.  Yet, my children were still left again without their special education services.

16. Providers whom I have contacted about service delivery have lamented over the difficulty in navigating the Department's payment systems.  For example, the McCarton Center for Developmental Pediatrics discharged my children on May 17, 2019 because of the Department's failure to pay for services within 30 days of rendering each service.  Even with an Interim Order Modifying Pendency from Impartial Hearing Officer Jeffrey J. Schiro, Esq. dated March 12, 2019 ("The DOE shall pay McCarton for the services referenced herein within 30-days of McCarton's submission of any monthly invoice."), the Department failed to comply.

17. On March 27, 2019, I notified the Department of an urgent travel aide issue. Andrea Parau of RNR Behavioral agency (an agency referred to me by the Department to provide specialized transportation services to J.V.1), smoked an e-cigarette in front of J.V.1. Through a simple Google search, I discovered that Ms. Parau had a criminal background and previously had her parental rights terminated. I was shocked that the Department would refer someone who had not passed a background check to work directly with my child.

18. In or around August 2019, I identified an agency called Bridge Kids that was available to provide home-based services to J.V.2. When Bridge Kids later became unavailable, I immediately notified the Department. To date, the Department has not identified a replacement agency. J.V.2 has not received any instruction, and very few other services, following the third pendency order of Hearing Officer Schiro, dated September 6, 2019.

19. In February 2020, I filed a complaint with the State Education Department for J.V.1., but the State failed to intervene or even initiate an investigation. Both J.V.1 and J.V.2's due process complaints have been pending for nearly two years now. I have long exhausted the administrative remedies in this matter.

20. My daughter, J.V.1, has not attended school since New York State and the New York City Department of Education closed all schools effective on or about March 17, 2020 due to the Covid-19 pandemic. Similarly, my son, J.V.2, has not received meaningful educational services since the start of the pandemic. Moreover, J.V.2 has not attended any educational program since his Early Intervention services were abruptly terminated.

21. I cannot afford to subscribe to an internet service, therefore, I do not have an internet connection in my apartment. I do not have a tablet or laptop for my children to use. In

late March 2020, I heard that the Department was providing free tablets for families to use for remote learning. I followed the Department's instructions and requested one that comes with its own wireless connection. I did not receive a tablet from the Department until several weeks later in late-April 2020.

22. When I finally received the Department's device, I attempted to use it on several occasions for remote learning sessions for my children. The device regularly lost internet connection and froze, causing frustration for me and my children. During these attempted remote learning sessions, I observed that my children could not sit still nor focus on the provider's tasks.

23. I have not observed any progress in J.V.2's pre-academic skills since his Early Intervention Program. I do not believe he is ready for kindergarten in September.

24. Through my own research, I learned that there are private providers available and willing to provide in-person services, including ABA, tutoring, speech therapy, occupational therapy, and physical therapy, during the pandemic. Some of these providers have centers which my children could access with appropriate special transportation provided by the Department, such as a transport van along with a transportation aide.

25. In my opinion, the impartial hearing process has no value unless the hearing officers' orders are enforceable. In my children's cases, the Department has failed to comply with the interim orders issued.

26. I believe it is the Department's responsibility to provide my children's services, even in the midst of this pandemic. However, the Department has failed to provide my children's services before the pandemic ever began. Although the Governor has permitted in-person instruction for children with disabilities this summer, the New York City

Department of Education has decided not to offer in-person instruction, further harming my children. Through my own online research, I have identified certain providers who are willing and able to provide in-person instruction to my children. Those providers, however, require up front payment. I cannot afford to pay for services up front and seek reimbursement later. I need prospective funding that is readily accessible to me.

27. I filed this Federal Court action because I wish for the Judge to order the creation of a Supplemental/Special Needs Trust or Escrow Account with funds for J.V.2's special education and related services in accordance with Hearing Officer Schiro's multiple Orders on Pendency for J.V.2 and an award of monetary damages relief as well as any other award of equitable relief that the Judge sees fit in order to make me and J.V.2 whole again.

28. I am actively and optimistically participating in settlement talks through my attorney, Ms. Mpi-Reynolds, and I am hopeful that the negotiations process will result in a full resolution. However, I am concerned about the length of time that settlement talks can take, and I seek emergency relief on behalf of J.V.2 that will allow me access to freely funding that I can use to immediately put together a special education program for J.V.2.

29. I respectfully seek this Court's intervention to enforce J.V.2's right to pendency services. I urgently and desperately need the Department to begin providing services to both of my children, but for purposes of this particular Court Action, to J.V.2. His services cannot be put on hold any longer.

Executed in Staten Island, New York on June 25, 2020

Digitally signed by Plaintiff L.V.

(initials used to protect privacy of

minor child)

_____

Signed: L.V.