```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                                 :
                                                Docket #1:19-cv-05451-
 L.V., et al.,                         :        AT-KHP

                  Plaintiffs,          :

   - against -                         :

 NEW YORK CITY DEPARTMENT OF           :        New York, New York
 EDUCATION,                                     October 1, 2020
                  Defendant.           :
                                                TELEPHONE CONFERENCE
---------------------------------------:

                      PROCEEDINGS BEFORE
            THE HONORABLE JUDGE KATHARINE H. PARKER,
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs:         MSR LEGAL & CONSULTING SERVICES, PLLC
                        BY:  OROMA HOMA MPI-REYNOLDS, ESQ.
                        503 Linden Street
                        West Hempstead, New York 11552
                        516-725-5514

For the Defendant:      NYC LAW DEPARTMENT
                        BY:  CAROLYN ELIZABETH KRUK, ESQ.
                        100 Church Street
                        New York, New York 10007
                        212-356-0893




Transcription Service:  Carole Ludwig, Transcription Services
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com

Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

**INDEX**

**E X A M I N A T I O N S**

| **Witness** | **Direct** | **Cross** | **Re-Direct** | **Re-Cross** |
|---|---|---|---|---|
| None | | | | |

**E X H I B I T S**

| **Exhibit Number** | **Description** | **ID** | **In** | **Voir Dire** |
|---|---|---|---|---|
| None | | | | |

```
 1                          PROCEEDINGS                        3
 2              THE CLERK:  Calling case 19civil5451, the
 3   Honorable Katharine H. Parker, presiding.
 4              Will counsel for the plaintiffs please state their
 5   name for the record.
 6              MS. OROMA HOMA MPI-REYNOLDS:  Good afternoon, your
 7   Honor.  This is Oroma Mpi-Reynolds for plaintiffs, L.V. and
 8   J.V.2.
 9              HONORABLE KATHARINE H. PARKER (THE COURT):
10   Great. Nice to talk with you.
11              MS. MPI-REYNOLDS:  Thank you.
12              MS. CAROLYN KRUK:  Good afternoon. Carolyn Kruk
13   with the New York City Law Department for the Department of
14   Education, for defendants.
15              THE COURT:  Okay.  Hi, Ms. Kruk. How are you?
16              MS. KRUK:  I'm well. Thank you. How are you, your
17   Honor?
18              THE COURT:  Okay.  Thank you.
19              All right, thank you, both, for the submissions
20   that you have provided me.
21              And, actually, before we get started -- I'm
22   jumping into things -- I need to go through a few
23   preliminaries. As you know, we are tape-recording this call
24   so that you can order a transcript. The call is open to the
25   press and public on a listen-only basis, and court rules
```

```
 1                          PROCEEDINGS                        4
 2   prohibit tape-recording and rebroadcasting of court
 3   proceedings; and a violation of this rule can result in
 4   sanctions.  And I would ask you to keep your phones on mute
 5   when you're not speaking for the best reception, and to
 6   state your name before speaking for clarity of any
 7   transcript that's created.
 8             All right, you have submitted letters, both sides
 9   have submitted letters to the Court concerning discovery
10   and concerning compliance with the injunctive relief that
11   plaintiffs received, and also concerning the commencement
12   of school this year. What I glean from the submissions
13   about the status of services being provided to J.V.2 is
14   that his mother, L.V., is impeding the process. We spoke
15   months ago about getting the transportation that L.V. was
16   insisting on.  The Board of Education was willing to do
17   that. And now L.V. wants something else.  That's not okay.
18   L.V. insisted on a -- she insisted on a program in
19   Manhattan, a specific program.  The Department of Education
20   approved that program, got him in, and it wasn't provided.
21   The Department of Education, with respect to transportation
22   aide, the Department of Education was willing to go with
23   the aide that L.V. said that she trusted or to provide a
24   babysitter so that she could have alternate -- if that
25   transportation aide wasn't available, either L.V. or her
```

2  mother could travel with J.V.2 to the services. And now the

3  Department of Education has arranged for services at a

4  local school, which should be much easier to get to from

5  Staten Island, and now I'm hearing that's not sufficient.

6            So these are real problems in cooperation with the

7  process, Ms. Mpi-Reynolds. Why is L.V. raising all these

8  obstacles to getting her son some services?

9            MS. MPI-REYNOLDS:  Your Honor, from L.V.'s

10 perspective, you know, she acknowledges that that travel

11 aide she identified became unavailable apparently

12 unbeknownst to her. But over the summer, after the

13 Department of Education, I guess, ceased providing or

14 offering the injunction services at the local public

15 school, LV did, on her own, make arrangements to secure ABA

16 therapy through the identified provider for J.V.2.  She

17 also began securing, I believe, occupational therapy for

18 J.V.2. So she is not trying to at least -- her goal is not

19 to impede her son getting the services, but she has

20 expressed a desire to select the providers herself versus

21 accepting the Department's arranged-for providers.

22            And with respect to the current arrangement that

23 Ms. Kruk wrote about, the parent does not believe that the

24 arrangement is in compliance with your Honor's Order in

25 that it does not include a special education teacher at the

```
 1                        PROCEEDINGS                        6
 2   school in Manhattan in the Lower East Side; it doesn't
 3   include physical therapy; and the parent is also concerned
 4   that through her own investigation and speaking with the
 5   assistant principal at P.S. 20 and the IEP coordinator
 6   there, who's like a special education administrator, and
 7   also the classroom teacher, the kindergarten teacher, L.V.
 8   is adamant that the related services, the limited related
 9   services that the Department has arranged to take place
10   there, the occupational therapy and speech therapy, would
11   not be provided in person. So I understand Ms. Kruk has
12   represented to me that it will be provided in person. L.V.
13   is indicating to me that she's heard directly from these
14   three individuals that the school that the model is at, the
15   related services would be provided remotely within the
16   classroom and that L.V. is concerned about how the
17   kindergarten teacher would facilitate it when there are no
18   providers actually present and that the services would be
19   remotely, I guess, streamed in into the classroom and not
20   in a separate location.  So, your Honor, that is her
21   perspective.
22              THE COURT:  Okay, well, she's being unreasonable
23   because that's, from what I'm seeing, the Department of
24   Education has gone through great lengths to try to set
25   something up, and she is throwing roadblocks and changing
```

```
 1                          PROCEEDINGS                         7
 2  her mind -- she's changed her mind multiple times.  So this
 3  is, it's a problem. If you think that there is a motion for
 4  failure to comply, and you want to bring some kind of
 5  action, we can have a hearing on all of the evidence. I
 6  just don't understand why she's not having her son start,
 7  at least start, at least get some of these services and see
 8  how they go, and then at least he's getting partial
 9  services and partial schooling. But as I understand it,
10  she's blocking everything. This is not good for her son. So
11  it just, it doesn't make any sense what she's saying, and
12  she's changed positions multiple times on a variety of
13  things. So at this point, what is going on with the
14  underlying administrative proceeding?
15            MS. MPI-REYNOLDS:   Your Honor, I believe in terms
16  of the administrative hearing, the hearing officer has
17  ruled that he will hear the issue of the denial of FAPE,
18  whether the Free Appropriate Public Education has been
19  offered or provided, and that issues concerning pendency,
20  enforcement or compliance with pendency would be heard by
21  your Honor in this pending federal action. But in terms of
22  the procedural posture at this time, I believe the
23  Department is nearing the conclusion of its case in chief.
24  And we have two hearing dates scheduled for October 23rd
25  and October 26th. I believe one of those dates may be the
```

```
 1                        PROCEEDINGS                         8
 2   beginning of the parents' case, but it's not certain yet,
 3   I believe. I'm waiting to hear from the Department's
 4   agency attorney by next Wednesday about whether the
 5   Department will be resting its case in the administrative
 6   hearing.
 7            THE COURT:  Okay, so at this point, do you want
 8   to make a formal application that the defendant hasn't
 9   provided or complied with the terms of the Court's order?
10            MS. MPI-REYNOLDS:  No, I do not wish to do that at
11   this time, your Honor.
12            THE COURT:  Okay, now, secondly, the Department
13   of Education brought up a discovery issue, and
14   specifically, it is seeking certain information related to
15   J.V.2's education and services.  And as I understand it,
16   L.V. is objecting to this; and, Ms. Mpi-Reynolds, you're
17   saying that the law doesn't permit it?
18            MS. MPI-REYNOLDS:  Your Honor, I believe from the
19   research that I've found, that J.V.2's records are
20   protected by the IDEA, and these particular records, which
21   are not in the possession of the Department.  They would,
22   if they exist, be in the possession of private service
23   providers.  The parent's argument is that those records are
24   not covered essentially by the provisions within FERPA that
25   would allow disclosure to be compelled by a judicial
```

```
 1                          PROCEEDINGS                        9
 2   officer. FERPA has to do, as I understand it, with the
 3   release of records that are already within the Department
 4   of Education's possession and would require the parent to
 5   provide consent for that disclosure; and that the lack of
 6   consent of a parent can be superseded by a judicial officer
 7   within the context of FERPA. But the parent's argument is,
 8   with respect to these particular records, that if they
 9   exist are maintained by private entities; and to the extent
10   that the records reflect special education services
11   rendered by these private agencies to J.V.2, that FERPA in
12   terms of that particular provision that would allow
13   disclosure via court order does not apply, and rather, the
14   IDEA, which appears to provide a high-end level of
15   protection on the basis that these records concern a child
16   with a disability and arguably more sensitive,
17   confidential information, that I did not find in my review
18   of the IDEA a similar provision that would allow a
19   disclosure over the objection of the parent.
20           THE COURT:  Okay, Ms. Kruk, I'd like to hear from
21   you on this issue.
22           MS. KRUK:  Your Honor, so plaintiffs are suing
23   the Department of Education in federal court under the
24   IDEA. And discovery is permitted under the IDEA. And to the
25   extent that the parent is unwilling to consent to the
```

```
 1                        PROCEEDINGS                    10
 2   release of this information, some of it may be covered by
 3   FERPA or some may not.  The bottom line, the Department of
 4   Education would be prejudiced without gaining access to the
 5   information. It's somewhat framed for the plaintiffs to sue
 6   the Department of Education under the same law that it
 7   seeks protection and the ability to withhold relevant
 8   records in the context of litigation.
 9             THE COURT:  All right, well, I'm looking at
10   34 CFR §3622 right now. And as I read it, the --
11   information can be disclosed without parental consent to
12   officials of participating agencies for purposes of meeting
13   the requirements of the IDEA. And there's nothing that I've
14   seen in the relevant law that would preclude discovery of
15   relevant information when the dispute and suit is against
16   the Department of Education that needs to defend itself. So
17   I don't read the provision in the same way.  And under
18   34 CFR §99.31(a)(1), which is the FERPA, it allows for
19   disclosure, even without the consent of a parent, to school
20   officials, including teachers, within the agency or
21   institution for purposes of complying with the law. And
22   here we're talking about a legitimate purpose for
23   requesting the information, not only to defend itself in
24   the lawsuit but also for ongoing compliance with the IDEA.
25   So I don't read the rules in the same way that you do,
```

```
 1                          PROCEEDINGS                       11
 2   Ms. Mpi-Reynolds, and I'm going to require that these
 3   disclosures be made.
 4             So, Ms. Kruk, I think that the -- I think what you
 5   could do is submit a proposed court order to the provider
 6   for the Court's review.
 7             MS. KRUK:  Thank you. Yes, I'll do so. I'll draft
 8   that Order, a Proposed Order for your Honor and submit that
 9   in the next few days.
10             THE COURT:  Okay. The other thing I wanted to
11   raise with both of you is that you've submitted a lot of
12   things to me by email, and I don't think that that's the
13   appropriate way to submit things to the Court unless it
14   concerns settlement.  And I do know that there's some
15   overlap in what we've been talking about; but to the extent
16   there are issues pertaining to discovery in the case, the
17   discovery schedule or compliance with the injunctive
18   relief, those things need to be filed on ECF.  And, of
19   course, you can request that documents be filed in
20   accordance with the Court's procedures. So I want to make
21   sure that you're filing things on ECF, okay?
22             MS. KRUK:  Very well. I'll -- the Department of
23   Education will submit a required motion to seal some of the
24   information in the attached emails. Otherwise, I did draft
25   the letters with filing them on the public docket in mind.
```

```
 1                         PROCEEDINGS                     12
 2   So I was going to check with your Honor in terms of how to
 3   proceed, but appreciate you raising the matter. Thank you.
 4              THE COURT:  Yes. You can file it -- there's a way
 5   now on ECF where it can be filed and marked under seal
 6   until there's a ruling.
 7              MS. KRUK:  Great.
 8              THE COURT:  And the website for the Court has
 9   directions about that, because it only recently changed.
10   It's a more streamlined process now.
11              MS. KRUK:  Wonderful. Thank you.
12              THE COURT:  Okay?
13              MS. MPI-REYNOLDS:  Thank you.
14              THE COURT:  Where are you otherwise on discovery
15   on the remaining claim of retaliation?
16              MS. KRUK:  So, your Honor, on the retaliation
17   claim, no Amended Complaint was filed yesterday. So one of
18   the issues I wanted to address was identifying the
19   defendant's time to answer. We have reached a settlement in
20   principle on all monetary claims.  And I have received
21   updated, an updated demand from the plaintiffs that I'm
22   reviewing.  We're still quite far apart in terms of our
23   respective beliefs on a reasonable hourly rate and the
24   scope of that settlement in principle.  But we're hopeful,
25   I think, that that would be resolved.
```

```
 1                      PROCEEDINGS                   13
 2            THE COURT:  Does what you're talking about in
 3   terms of a resolution also cover the attorneys' fees, the
 4   interim attorney -- well, I guess all of the attorneys'
 5   fees issues that Ms. Mpi-Reynolds raised?
 6            MS. KRUK:  I will try to address them at the same
 7   time.  Again, we're quite far apart in terms of our
 8   interpretation of what that should cover, but I'm in the
 9   process of submitting my request to the comptroller to
10   request authority to resolve those distinct portions.  And
11   if we cannot resolve one or the other, then litigating it
12   is certainly an option.
13            THE COURT:  And I'm going to permit a motion for
14   interim fees.  And so what I'd like to suggest is that you
15   either come to a resolution within the next month or -- I
16   guess technically the motion has been filed -- I'll take a
17   look at that.
18            What you --
19            MS. MPI-REYNOLDS:  Your Honor, I did file it on
20   August --
21            THE COURT:  Yes, it's Document ECF 85. And so
22   what I would ask is for the City to respond to that motion
23   by November 6th, if you haven't worked out a resolution.
24            MS. KRUK:  Very well. Thank you, your Honor.
25            THE COURT:  And in terms of the -- since the
```

```
 1                         PROCEEDINGS                        14
 2   settlement would be of the -- would settle the remainder of
 3   the case, what I'd like to do is give you all this month to
 4   hopefully resolve the remaining issues between yourselves.
 5   So I would ask that the Amended Complaint, if it's going to
 6   be filed, be filed on the 6th of November.  And then the
 7   City will have until the 4th of December to answer it.
 8            MS. KRUK:  Very well.  Plaintiff -- this is
 9   Carolyn with the -- counsel for the Law Department.
10   Plaintiffs' counsel has represented that they do not intend
11   to file an Amended Complaint. Perhaps we can address that
12   during today's call?
13            THE COURT:  Ms. Mpi-Reynolds, what's the -- yes,
14   initially, at the outset of my assuming representation in
15   this matter, I did have some discussions with Ms. Kruk
16   about the parent's desire to include the older sibling of
17   J.V.2, who's known as J.V. 1; the parent has since decided
18   not to proceed in that manner. What my concern is at this
19   time with respect to amending the Complaint, I'm not
20   exactly clear from my opposing counsel whether she's
21   intending to, you know, claim a reduction of fees based on
22   all of the relief sought in the Complaint drafted by
23   predecessor counsel, Laura Barbieri. I'm not sure if that's
24   playing a role.  And my intention is to kind of proceed
25   claim by claim in that there is first the preliminary
```

```
 1                          PROCEEDINGS                      15
 2   injunction, which had been achieved; and the settlement
 3   with respect to monetary damages, including retaliation,
 4   which has been accepted.  And so from my perspective, that
 5   the sole remaining issue following your Honor's Order or
 6   Report and Recommendation to Judge Torres, that the sole
 7   remaining issue in contention which the parent seeks to
 8   proceed on or settle, would prefer to settle, is the
 9   enforcement in compliance with the Pendency Order. So, in
10   other words, I just wanted to hear the Court's perspective
11   on whether it is necessary for me to spend the time in
12   amending the Complaint just to narrow the issues to what is
13   currently still in dispute or whether I can just for
14   purposes of judicial economy leave the Complaint as written
15   and just continue with the remainder of the case.
16            THE COURT:  Well, you're not reasserting any
17   claims that were dismissed without prejudice is what I'm
18   hearing. It sounds like it may not be necessary to submit
19   the Amended Complaint if the only issues remaining are the
20   enforcement of the Pendency Order and the attorneys' fees
21   piece.
22            MS. KRUK:  Defendants agree.
23            MS. MPI-REYNOLDS:  Thank you.
24            THE COURT:  So what I think you should do is
25   write to me on November -- so, actually, what I'll do is
```

```
 1                        PROCEEDINGS                    16
 2   I'll take those deadlines off, the November 6 and the
 3   December 4 deadline. So I'll remove those deadlines.
 4             Okay, can you all provide me a status update in
 5   two weeks?
 6             MS. KRUK:  Yes, your Honor.
 7             MS. MPI-REYNOLDS:  Yes, your Honor.
 8             THE COURT:  Okay. All right. I have another
 9   conference. I think some people are dialing in for that.
10   So I need to adjourn this conference.  And I hope you
11   continue to stay in good health.
12             MS. KRUK:  Thank you, your Honor.
13             THE COURT:  All right. Bye-bye.
14             MS. MPI-REYNOLDS:  Bye-bye.
15             (Whereupon, the matter is adjourned.)
16
17
18
19
20
21
22
23
24
25
```

```
                                                              17
 1
 2
 3                    C E R T I F I C A T E
 4
 5         I, Carole Ludwig, certify that the foregoing
 6   transcript of proceedings in the case of L.V. et al v. New
 7   York City Department of Education, Docket #19-cv-05451-AT-
 8   KHP, was prepared using digital transcription software and
 9   is a true and accurate record of the proceedings.
10
11
12
13   Signature_____*Carole Ludwig*_____
14              Carole Ludwig
15   Date:    October 22, 2020
16
17
18
19
20
21
22
23
24
25
```